## LICHTER et al. v. GOSS et al.
### No. 9311.

Circuit Court of Appeals, Seventh Circuit.
Oct. 29, 1947.

Carl Schulz, of Chicago, Ill., Paul W. Steer and Steer, Strauss & Adair, all of Cincinnati, Ohio, and Addis E. Hull and Poppenhusen, Johnston, Thompson & Raymond, all of Chicago, Ill., for plaintiffs-appellants.

Frank M. Pfeifer, of Springfield, Ill., and James H. Cartwright, of Chicago, Ill. (Pfeifer, Fixmer & Gasaway, and Winston, Strawn & Shaw, all of Chicago, Ill., of counsel), for defendants-appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an order entered December 18, 1946, dismissing plaintiffs' complaint which prayed for a declaratory judgment on the ground that it failed to show compliance, as a condition precedent to bringing the action, with the provision of a contract entered into between plaintiffs and defendants providing for arbitration. The failure of plaintiffs to allege such compliance was raised by defendants' motion to dismiss.

On October 3, 1944, defendants, being the contractors under a contract with the Government for the construction of a veterans' hospital at North Little Rock, Arkansas, entered into a subcontract with the plaintiffs to do certain masonry work as a part of such construction. Defendants' contract with the Government was dated September 22, 1944, and called for the completion

of such contract within 350 calendar days after notice to proceed. Defendants' contract with the Government is designated as Exhibit A, and that with the plaintiffs as Exhibit B. Both contracts are attached to and made a part of the complaint.

Article IV of Exhibit B provides:

"The work shall be commenced immediately upon notice to do so by the Contractor, and the Subcontractor shall thereafter diligently prosecute the work to completion in such manner as the Contractor may deem best calculated to coordinate with the work of the Contractor and others * * *.

"But, in any event, said work shall be completed on or before the 1st day of June, 1945, unless delayed by Acts of God, or causes beyond the control of the parties hereto as defined in Article VIII(c, d) of this agreement."

Article VIII consists of three paragraphs, (a), (b) and (c). It contains no paragraph (d). The reference, therefore, in Article IV to (d) was an error, and it evidently was intended to refer to paragraphs (b) and (c).

Thus, Article IV provided for the completion of plaintiffs' contract by June 1, 1945, unless delayed by certain acts therein specified. Plaintiffs, however, for reasons alleged in the complaint hereinafter referred to, were prevented from commencing their work under the contract (Exhibit B) until on or about the 18th day of May, 1946. Shortly prior to this date, a controversy arose between plaintiffs and defendants as to whether plaintiffs were obligated to proceed with the masonry work, and as a result another contract dated April 6, 1946 was entered into between the parties. This contract, designated Exhibit C, is also attached to and made a part of the complaint. Exhibit C will be subsequently referred to in more detail.

At this point it appears appropriate to relate the material portions of Article VIII, (b) and (c), Exhibit B, referred to in Article IV, as already noted. Paragraph (b) provides:

"In the event that the Subcontractor shall claim to have sustained any damage by reason of delays, or for the perform-ance of additional or different work, or for any other cause whatsoever, which claimed damage is or may be due to any act, omission, direction, or order of the Owner, the Subcontractor shall not have or assert any claim, or prosecute any suit, action or proceeding therefor against the Contractor * * *."

The paragraph continues by providing a method by which the plaintiffs may present a claim to the defendants, and imposes upon the latter the duty of presenting such claim to the owner (Government).

Paragraph (c) provides:

"In the event that the Subcontractor is delayed by the Contractor or any other Subcontractor in the progress of the work provided for in this contract, the Subcontractor shall be allowed one day extension of time for each calendar day that he has been so delayed, and no claim shall be made or allowed to the Subcontractor for damages which may arise out of any delay caused by the Owner, unless the Contractor is allowed and compensated by the Owner for such delay or delays."

This paragraph continues by providing that if the defendants are compensated for delays caused by the owner, plaintiffs shall be entitled to their proportionate share of such recovery.

Plaintiffs did not commence the work to be done under their contract with the defendants (Exhibit B) until May 18, 1946, subsequent to the execution of Exhibit C on April 6, 1946, which was some nineteen months after the execution of Exhibit B, eleven and one-half months after the completion date set forth in Article IV of Exhibit B, and some eight months after the date defendants had agreed under their contract with the Government (Exhibit A) to complete the entire project.

The contention of the respective parties arising from this delay is embodied in Exhibit C. Plaintiffs' contention is stated, "that by reason of said delay in making the work ready for it, there was no obligation upon its part to proceed with the work provided for in the contract on and after the 18th day of May, 1946." Defendants' contention as stated is that the plaintiff "is obligated to perform the said contract com-

mencing on and after the 18th day of May, 1946, in accordance with the terms of said contract."

The parties, after having thus stated their respective contentions, agreed that the plaintiffs should proceed to perform the work provided for in their contract (Exhibit B), and that the prosecution of the work under the terms of the contract should not be deemed a waiver of any rights of the plaintiffs to claim that they were entitled to damages for the delay in making the work ready for them.

The agreement further provided that if the plaintiffs established that the defendants were liable to the plaintiffs "for the increased cost in the performance of the contract * * * with damages consequent to" the plaintiffs "through delay in the performance of said contract and should such ascertainment of liability be found to be had upon the part" of the defendants, "the damages shall be those listed below and shall be calculated and paid * * * upon the following formulae: * * *." Then follow under separate headings the formulae for calculating "Amount due to Increases in Wage Rates," "Amount due to Increases in Cost of Materials," "Amount due to Drop in Labor Efficiency," and "Other Costs and Damages."

The complaint, so far as pertinent, alleges "that defendants failed to perform and furnish and to complete the work, labor and materials involved and required of them to be performed under the terms of said contracts, Exhibits A and B, within the time specified and reasonably contemplated by the terms of said contracts, by reason of which plaintiffs were delayed, hindered and prevented, until on or about the 18th day of May, 1946, from entering upon and proceeding with the work, labor and materials required of them to be furnished and performed under their contract with defendants, Exhibit B."

Defendants' motion to dismiss, sustained by the lower court, alleged a failure on the part of the plaintiffs to show compliance with Article VIII, paragraphs (a), (b) and (c), of Exhibit B, as a condition precedent to the bringing of the suit.

Paragraph (a) of this Article (we have heretofore referred to paragraphs (b) and (c) ) provides:

"Except as otherwise specifically provided herein, whenever the Contractor and Subcontractor are unable to agree on any question arising under this contract, the dispute shall be submitted for the arbitration and determination of the Owner, or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto."

The primary issue is whether plaintiffs had obligated themselves by contract to submit to arbitration the claim or cause of action stated in their complaint. Plaintiffs, in contending that they were not so obligated, advance numerous contentions, the most important of which are (1) that the agreement of April 6, 1946 (Exhibit C) superseded any previous provision pertaining to arbitration, and that they occupied a position in court as though no such provision had been contained in the previous contract (Exhibit B); and (2) in any event, the complaint presented for decision no factual issue but solely a legal question, and such being the case the parties could not legally agree to arbitration—in other words, that defendants' delay on its face was such as to entitle the plaintiffs as a matter of law to a declaration that they were excused on April 6, 1946 (the date of the execution of Exhibit C) from performance under their subcontract.

In connection with the effect which this agreement (Exhibit C) had upon the relation of the parties, plaintiffs lay much stress upon an alleged oral agreement entered into prior thereto, that the controversy then existing between the parties, that is, whether plaintiffs were obligated to go forward with the masonry work in the Spring of 1946, be referred to a court and determined "as a matter of law." After the case had been argued and submitted to the court, an affidavit by one of the plaintiffs was filed in support of plaintiffs' contention. There was also filed an affidavit by one of defendants' counsel who was present at the conference where the alleged oral agreement was made, categorically denying any such agreement as stated in plaintiff's affidavit. These affidavits were received by

the court, but there is nothing in the record to indicate that they were considered or given any effect. We are of the view that they are wholly immaterial as to any issue now before the court. Passing the dubious legal question as to whether any effect should be given to an oral agreement subsequently reduced to writing by the parties, it is sufficient to note that the affidavits did nothing more than create an issue of fact as to whether the parties entered into such an oral agreement. Furthermore, it may be observed that the complaint contains no allegation concerning such oral agreement but relies upon the written agreement (Exhibit C) which is attached to and made a part of the complaint.

■ Neither can we agree with plaintiffs' contention that the agreement of April 6, 1946 (Exhibit C) superseded or eliminated the arbitration provision contained in the former contract (Exhibit B). Exhibit C expressly refers to the contract of October 3, 1944 (Exhibit B), and states, "a copy of which is attached herewith and made a part hereof." Admittedly there is no language in Exhibit C which expressly eliminates the arbitration provision. It is argued, however, that Exhibit C is couched in such legal phraseology as to indicate that it was the intention of the parties to substitute a court as the vehicle for adjudicating the dispute which then existed between them. We think that a court would not be justified in eliminating this express arbitration provision based on an inference that the parties might have so intended.

This brings us to the more troublesome contention that the arbitration provision, even though in effect, is of no consequence because plaintiffs by their complaint presented for decision only a legal issue, and that parties to a contract containing an arbitration clause are not obligated to arbitrate questions of law. Numerous cases are cited in support of the latter phase of this contention. Defendants concede that such is the law, and for the purpose of our decision we so assume. Thus, there is no occasion to cite or discuss the cases relied upon by the plaintiffs as sustaining the proposition.

■ Thus we come to the basic question raised on this appeal, that is, whether defendants' delay was so unreasonable as a matter of law as to relieve plaintiffs of their obligation to perform. We have already noted the delay to which plaintiffs were subjected, and it can be forcibly urged that on its face it appears unreasonable. Assuming that the complaint poses a legal question, we are of the view that such question cannot be decided without reference to the attending facts, conditions and circumstances. In other words, it is our view that it could not be held as a matter of law that the defendants are liable for damages for such delay. The result of such a holding would be to preclude the defendants from relying on any factual situation as a reason for delay. Furthermore, if the arbitration provision had been eliminated, as the plaintiffs urge, it would mean that the defendants could not by answer to the complaint state any facts which would constitute a legal reason for their delay in performance. In other words, the door would be closed and they would be deprived of their day in court.

■ Furthermore, that plaintiffs are not entitled to a declaratory judgment is shown, so we think, by certain provisions of Exhibit B. Article IV of this exhibit, which fixes the time for the completion of the work by plaintiffs, provides: "* * * unless delayed by Acts of God, or causes beyond the control of the parties hereto as defined in Article VIII(c, d) of this agreement." As already noted, there is no paragraph (d) in Article VIII, and this reference must have been to paragraphs (b) and (c). But whether or not we be right in this assumption, paragraph (b) is in the contract and expressly provides that the plaintiffs "shall not have or assert any claim, or prosecute any suit, action or proceeding therefor against the Contractor [defendants]" for any damage "by reason of delays * * * or for any other cause whatsoever," which may be due to "any act, omission, direction, or order of the Owner [Government]." Plaintiffs attempt to escape this apparently prohibitory language by asserting that the complaint alleges that the defendants were responsible for the delay and not the "Owner." This

assertion is beside the point because the provision evidently was for the protection or at any rate for the benefit of the defendants where the delay was caused by the Government. Paragraph (c) also provides that "no claim shall be made or allowed to the Subcontractor [plaintiffs] for damages which may arise out of any delay caused by the Owner, unless the Contractor is allowed and compensated by the Owner for such delay or delays." Under plaintiffs' theory the defendants would not be permitted to show as a reason for their delay that such was caused by an Act of God or that the owner (Government) was responsible for the delay. The complaint does not negative that the delay was not so caused. True, as already noted, it is alleged that the delay was occasioned by the defendants but it is not alleged that it was because of any negligence on their part.

We, therefore, conclude that the defendants are entitled to a hearing and a finding of the facts by an arbitrator on any issue material to their reason for delay in performance. It may be that the plaintiffs, or for that matter the defendants, will be entitled as a matter of law to a declaratory judgment predicated upon the facts so found.

The order dismissing the complaint is therefore affirmed.