Jacob **LICHTER** and Jennie L. Lichter, partners doing business as Southern Fireproofing Company, Plaintiffs-Appellants,

v.

William R. **GOSS**, Helen Goss and Helen Goss Lewis, partners doing business as William R. Goss Company, Defendants-Appellees.

No. 11509.

United States Court of Appeals
Seventh Circuit.

May 8, 1956.

Paul W. Steer, Cincinnati, Ohio, Wendell J. Brown, Chicago, Ill., MacLeish, Spray, Price & Underwood, Chicago, Ill., Steer, Strauss & Adair, Cincinnati, Ohio, for appellants.

Douglas C. Moir, Chicago, Ill., Edward J. Wendrow, Edmund J. Kenny, Chicago, Ill., Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel, for appellees.

Before DUFFY, Chief Judge, and MAJOR and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiffs sued defendants to recover the reasonable value of work which plain-

tiffs performed under a construction contract entered into with defendants, or, in the alternative, certain additional costs and damages incurred by them over and above the original contract price of $44,-000. Defendants filed an answer and a counterclaim. There was a trial by the district court, without a jury, following which the court entered findings of fact and conclusions of law and a judgment that the plaintiffs recover nothing and that defendants recover $1,069.67 and costs of the action against plaintiffs, from which plaintiffs have brought this appeal.

On August 25, 1944, defendants, as Contractor, entered into a contract with United States of America, as Owner, for construction of a group of buildings for the Veterans Administration at Perry Point, Maryland. On October 3, 1944, defendants, as Subcontractor, contracted with plaintiffs to construct interior hollow building tile and structural facing tile units. The contract of August 25, 1944, insofar as applicable, is incorporated into the contract of October 3, 1944. Defendants agreed to complete the prime contract within approximately 330 calendar days after receipt of notice to proceed, which notice was received on August 25, 1944.

Article IV of the contract of October 3, 1944 required plaintiffs to commence work immediately upon notice by defendants and that said work should be completed by April 1, 1945, unless delayed by acts of God, or causes beyond the control of the parties thereto, as defined in article VIII (b) (c) of said agreement. The last mentioned provisions are as follows:

"(b) In the event that the Subcontractor shall claim to have sustained any damage by reason of delays, or for the performance of additional or different work, or for any other cause whatsoever, which claimed damage is or may be due to any act, omission, direction, or order of the Owner, the Subcontractor shall not have or assert any claim, or prosecute any suit, action or proceeding therefor against the Contractor, but provided that such claim is prepared by the Subcontractor in proper form for presentation to the Owner, so that said claim may be presented to the Owner in the manner and within the time specified in the principal contract, the Contractor agrees to present such claim to the Owner, either in his own name or in the name of the Subcontractor. The Contractor shall have the right to deduct from any sums recovered upon any such claim, all costs and disbursements, including legal fees and expenses incurred by the Contractor in the presentation, prosecution, and collection of such claim or claims.

"(c) In the event that the Subcontractor is delayed by the Contractor or any other Subcontractor in the progress of the work provided for in this contract, the Subcontractor shall be allowed one day extension of time for each calendar day that he has been so delayed, and no claim shall be made or allowed to the Subcontractor for damages which may arise out of any delay caused by the Owner, unless the Contractor is allowed and compensated by the Owner for such delay or delays. In the event that the Contractor is compensated for delays caused by the Owner, then the Subcontractor shall be paid out of such amount so recovered, after deducting all legal expenses in making such recovery, for the days the Subcontractor was actually delayed in the ratio that the amount of the subcontract bears to the amount of the principal contract; provided that the period of delay for which the Subcontractor makes claim is within the period for which recovery for delays is made by the Contractor."

The work was delayed and plaintiffs were not able to commence work by April 1, 1945. On May 18, 1945 defendants

notified plaintiffs that they should start no later than June 4, 1945, and plaintiffs agreed to do so. By July 6, 1945, plaintiffs did certain work in a store house covered by their contract. The contract price for this work was $1,850, being about 4 per cent of the total contract price of $44,000. Thereafter plaintiffs suspended operations because of delay in other phases of the construction. In March 1946 defendants called upon plaintiffs to perform their contract and the latter claimed that they were excused from performance due to the passage of time. On April 6, 1946, the parties entered into a supplemental agreement in which neither waived rights under the 1944 contract, but which provided for plaintiffs' work to proceed. This supplemental agreement preserved the questions in controversy but did not in any way effect their solution.

Plaintiffs' working crew returned to the job on April 8, 1946. Plaintiffs' work was completed in February 1947 and the entire contract was completed in April 1947, which was within the time of performance as extended from time to time by the Owner.

Defendants admit that delays occurred but they say that these delays were caused by the Owner or acts of God.

The district court's findings are to the effect that the Owner estimated that a total quantity of 15,000 feet of piling with an average length of 21 feet for each pile would be required. The piling was ordered and the driving machine was equipped to handle piles up to 32 feet in length. When pile driving was commenced, the defendants and the Owner learned that the piles would have to be driven substantially deeper than 21 or 32 feet. Longer pile shells had to be ordered and a longer driving rig was required to handle the additional length. There was a delay in getting the additional piles and driving equipment. Eventually a total of 30,000 feet of piling, with an average pile length in excess of 40 feet, was required.

It was originally estimated that the pile driving would be completed in October of 1944 when the weather was favorable. Because of the 100 per cent underestimate by the Owner, pile driving carried over into the winter months when rain and snow filled the excavation, causing the banks to slough in, requiring continuous pumping of water out of the excavation and repeated hand re-excavation of the pile cap footings. The pile work was not completed until April 1945. The Owner granted defendants a four-month extension of time to perform the pile work. Testimony on this point is not in dispute. Continuing, the district court found that the delay was caused by an act of the Owner, without negligence or fault on the part of defendants. The district court further found that the piling had to be completed before work on the concrete foundations started. It is not disputed that the four-month period, April to July 1945, was the wettest such period in that area in 55 years and that pouring of foundations was seriously delayed. The rainy weather was of such character as to be considered an act of God and not a delay for which defendants were at fault.

The district court made the following findings in regard to the brick to be used: In November 1944, the defendants secured approval of grade M brick to be used in exterior walls; they ordered their requirements and some brick was actually delivered to the work site. In April 1945, the Owner rescinded its approval of that brick and requested that new samples be submitted. It is not disputed that this rescission arose because similar grade M brick had proved unsatisfactory in certain other buildings erected by the Owner, which had no connection with this case or these defendants. Thereafter, during the spring and summer of 1945, new samples of grade M brick were submitted to the Owner and rejected; conferences between the Owner and defendants were held, and the use of other types of materials was considered. After examining grade H brick and hollow tile, the Owner in December

1945, approved cinder block for use in the exterior walls. The Owner granted defendants an extension of four and one-half months' time for this change in brick specifications. The change in approval of the original sample of M brick was an act of the Owner for which the defendants were not at fault and the delay during 1945 occasioned by the need to secure approval of new materials was not due to negligence or fault of the defendants, but to action by the Owner.

During the period of delay and uncertainty about the type of brick to be used, coordination of the work suffered. To keep the job going during the summer and fall of 1945, the defendants erected the "reinforcing" (sic) concrete part of the building and put on the roof before the exterior walls were in place although normally the exterior walls would be placed first.

The cinder block was approved in December 1945. Once the block was delivered, work proceeded rapidly and the exterior walls were completed in April 1946, and plaintiffs were then able to start interior partition work.

The district court, in finding No. 20, summarized as follows: "The proximate cause of delay was the underestimate in the amount of piling required and the fact that approval of a sample of grade M brick issued in November 1944, was recalled in April 1945, with subsequent changes in material specifications, both of which were direct acts of the Owner affecting this job. These delays were of major significance to the work, interrupted the sequence of building operations and created a condition whereby the job was further delayed by the unusual weather, all without fault of the defendants. Delays from weather might have been avoided if the work had not been initially delayed by the piling and brick problems and had proceeded during the early part of the work period according to its original schedule." In finding No. 23, the court said: "On the facts, it appears that the delay was proximately caused by acts of the Owner and acts of God within the meaning of the contract in question."

Applying the provisions of the October 3, 1944 contract to the facts found, the district court concluded as a matter of law that "on the facts of the case, the delay in performance here was proximately caused by acts of the Owner and acts of God within the meaning of the contract in question. There is no showing that the defendants caused the delay or allowed it to continue by act or omission chargeable to defendants' negligence or fault."

No contention has been made by plaintiffs that they ever prepared and delivered to defendants any claim against the Owner pursuant to article VIII (b). They seem to rely entirely upon article VIII (c).

1. An identical contract between the parties hereto, but involving another Veterans Administration project, was considered by this court in Lichter v. Goss, 7 Cir., 163 F.2d 1000. There the same plaintiffs sought a declaratory judgment against the same defendants. They claimed that plaintiffs were delayed and prevented from doing their work under their contract with defendants for about 19 months, and hence there was no obligation upon their part to proceed with performance on their part. At page 1003, we said:

"Thus we come to the basic question raised on this appeal, that is, whether defendants' delay was so unreasonable as a matter of law as to relieve plaintiffs of their obligation to perform. We have already noted the delay to which plaintiffs were subjected, and it can be forcibly urged that on its face it appears unreasonable. Assuming that the complaint poses a legal question, we are of the view that such question cannot be decided without reference to the attending facts, conditions and circumstances. In other words, it is our view that it could not be held as a matter of law that the defendants are liable for damages for

such delay. The result of such a holding would be to preclude the defendants from relying on any factual situation as a reason for delay. * * *

"Furthermore, that plaintiffs are not entitled to a declaratory judgment is shown, so we think, by certain provisions of Exhibit B. Article IV of this exhibit, which fixes the time for the completion of the work by plaintiffs, provides: ' * * unless delayed by Acts of God, or causes beyond the control of the parties hereto as defined in Article VIII (c, d)' " (*sic*) " 'of this agreement.' * * * paragraph (b) is in the contract and expressly provides that the plaintiffs 'shall not have or assert any claim, or prosecute any suit, action or proceeding therefor against the Contractor (defendants)' for any damage 'by reason of delays * * * or for any other cause whatsoever,' which may be due to 'any act, omission, direction, or order of the Owner (Government).' "

An order dismissing the complaint was affirmed. In the case at bar the factual situation has been determined by a trial in the district court, which made findings of fact. Those findings of fact are to the effect that the delays of which plaintiffs complained were not caused by defendants, but were caused by the Owner and unusual weather conditions, which the district court considered an act of God. These findings were entered following a trial in open court in which evidence, both oral and documentary, was received.

■■ We are asked by plaintiffs to set aside these critical findings of fact. Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. provides, in part, that "In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment;

* * *. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *" We have examined the record and find that it discloses substantial evidence to sustain the findings of the district court. In West v. Schwarz, 7 Cir., 182 F.2d 721, at page 722, we said:

"However, it is not the function of this court to pass upon or consider *de novo* the evidence received upon the trial, Webb v. Frisch, 7 Cir., 111 F.2d 887, nor to weigh the controverted evidence. Smith v. American Transit Lines, Inc., 7 Cir., 163 F.2d 1014. Our duty is merely to ascertain whether the record discloses substantial evidence to sustain the findings of the trial court. Findings of fact shall not be set aside unless clearly erroneous, giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses."

The findings of fact in this case are not clearly erroneous and we will not disturb them. The conclusions of law are sound and we are in accord with them.

■ 2. Plaintiffs also contend that they "were not permitted to start their work (except for the small amount in June, 1945) until one year after it was expected, 'in any event,' to be completed; this was at least 15 to 16 months after the job should have been given to them." They say "the delay was so inordinate, unreasonable and extended that, in the spring of 1946, plaintiffs were discharged from their obligations under the contract." Plaintiffs contend that the district court "did not face this issue squarely. It proceeded with the assumption that plaintiffs were, in fact, obligated to go forward." They point out that, by their contract, plaintiffs were required to complete their work by April 1, 1945, "subject to the exceptions not-

ed", and that to do so "it was necessary that the job be ready for plaintiffs' work to start some three or four months earlier."

Whether or not the encountered delays would have justified plaintiffs in refusing to perform their contract when defendants notified them under date of May 18, 1945 to start their work, we are not called upon to determine. Actually the fact is that they did enter upon performance of their contract and by July 6, 1945 finished their work in the store house as required thereby. The contract price of $1,850 for that work, for which they were paid, amounts to over 4 per cent of the total contract price. If plaintiffs had a right to refuse to perform, they were put to an election as to whether they would take advantage of that right or waive it by proceeding to perform. If plaintiffs had any right of election in this regard on June 4, 1945, they elected to perform and are bound by their contract.

█ In Knutson v. Metallic Slab Form Co., 5 Cir., 128 F.2d 408, at page 411, the court said that: "for where a right to rescind arises it is ended by an election to proceed with the contract."

█ In Jack Mann Chevrolet Co. v. Associates Inv. Co., 6 Cir., 125 F.2d 778, at page 783, the court said:

"In order to rescind, a party must promptly so elect, and notify the opposite party, and adhere to the position taken."

To the same effect is Nelson v. Chicago Mill & Lumber Corporation, 76 F.2d 17, at page 23, 100 A.L.R. 87, where the court said:

"A right to rescind, abrogate, or cancel a contract must be exercised promptly on discovery of the facts from which it arises."

See also 17 C.J.S., Contracts, § 443, p. 926.

For the reasons hereinbefore set forth, the judgment of the district court is

Affirmed.