**BUTLER PRODUCTS COMPANY, an Illinois Corporation, George W. Butler and Gladys A. Butler, Plaintiffs-Appellees,**

v.

**UNISTRUT CORPORATION, a Michigan Corporation, Defendant-Appellant.**

No. 15641.

United States Court of Appeals
Seventh Circuit.

Oct. 10, 1966.

William W. Fullagar, Harlan L. Hackbert, Chicago, Ill., for defendant-appellant. Hackbert, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., of counsel.

Charles J. O'Laughlin, Holland C. Capper, Chicago, Ill., for Butler Products Co., an Illinois corporation, George W. Butler and Gladys A. Butler, plaintiffs-appellees. Raymond, Mayer, Jenner & Block, Chicago, Ill., of counsel.

Before SCHNACKENBERG, KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Butler Products Company, an Illinois corporation, was the exclusive distributor of defendant Unistrut Company, a Michigan corporation engaged in manufacturing metal framing products. The individual plaintiffs own Butler Products Company.

In February 1963, the parties entered into a written agreement under which plaintiffs sold substantially all of the assets of their company to defendant. This purchase agreement was supplemented by an agreement executed on May 31, 1963, the final closing date.

In view of paragraphs 6 and 10 of the purchase agreement, the parties concur that defendant had no obligation to hire any of the employees of the selling company, nor did defendant assume any obligations under plaintiffs' employment contracts.

During the period from February 28, 1963, until May 31, 1963, the plaintiffs conducted this distributing business on behalf of the defendant, with the profits and losses to be for defendant's account. Paragraph 2 of the supplemental agreement provided:

"Effective as the date hereof [May 31, 1963] First Party [plaintiff sellers] shall prepare an account of the conduct of the business being sold from March 1, 1963 to May 31, 1963, pursuant to provision of paragraph 9(d) of the Purchase Agreement, including an accounting of all the cash received and disbursed during that period. Within fifteen (15) days from the date hereof, First Party shall submit a statement of said accounting to Second Party [defendant buyer] and shall tender therewith a remittance of the amount due in the event the said accounting shows a balance due from Second Party to First Party. Second Party shall be allowed fifteen (15) days from receipt thereof within which to examine said accounting and make any objections in writing thereto. In the event that there are no written objections to said accounting within said fifteen-day period, Second Party shall accept the payment tendered or make a remittance of the sum due, as the case may be. If Second Party has any objections to said accounting, it shall send a statement of said objections to First Party in the manner specified for serving notices in the said Purchase Agreement. In the event First Party shall not agree to said objections, it shall, within five (5) days after the receipt of said objections, so notify Second Party, whereupon the items in dispute shall be submitted for determination to the firm of Peat, Marwick, Mitchell & Co. The determination of Peat, Marwick, Mitchell & Co. shall be binding upon the parties. The accounting shall be prepared by employees of Second Party without cost to First Party. All costs incurred by the sumission to Peat, Marwick, Mitchell & Co. shall be divided equally by the parties."

During the three-month period when the business was conducted for defend-

ant by the plaintiffs, they operated the business as it always had been operated. In the normal course of the business operations, some of plaintiffs' employees went on vacation and, pursuant to Company policy of several years' standing, they received their usual wages while away from work. In February 1963 and prior thereto, defendant was already familiar with plaintiffs' vacation policy.

On June 1, 1963, defendant assumed the operation of the business pursuant to the purchase agreement and voluntarily hired many of plaintiffs' former employees. Defendant continued to follow plaintiffs' vacation policy and allowed such employees vacations with pay, the duration depending on seniority.

In September 1963, plaintiffs furnished defendant with the required accounting relating to the conduct of the business from March 1, 1963, to May 31, 1963. Defendant objected to the accounting and, *inter alia*, sought to offset the amount shown due to plaintiffs with the amount defendant paid to its employees for vacations taken from June 1 to October 1, 1963.* Defendant asserted that such vacation pay was in excess of $35,000 and was an obligation of plaintiffs.

Plaintiffs thereupon filed a declaratory judgment action, seeking a declaration that it was unlawful for defendant to offset the balance due plaintiffs by the amount of the vacation payments made by defendant after it took over the operation of the business on June 1, 1963. Defendant's principal defense was that this controversy must be decided by arbitration in accordance with the above-quoted portion of the supplemental agreement. After concluding that this controversy was not within the arbitration clause, the District Court determined that defendant could not offset the amount due plaintiffs by the vacation pay defendant had given its employees. We agree that this controversy

was outside the arbitration clause of the purchase agreement and that the attempted offset was improper.

█ Since this is a diversity case, Illinois law on arbitration is determinative, but the federal and Illinois authorities are in accord in this field.

██ It is well settled that arbitration is a matter of contract, and a party cannot be required to arbitrate any dispute which he has not agreed to arbitrate. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed. 2d 462; Local Union No. 483 v. Shell Oil Co., (7th Cir., September 22, 1966) 369 F.2d 526 Independent Petroleum Workers v. American Oil Co., 324 F.2d 903, 906 (7th Cir. 1964); School District No. 46 v. Del Bianco, 68 Ill.App.2d 145, 154, 156, 215 N.E.2d 25, 29, 31 (2d Dist., 1966). It is for the courts to determine whether the claim is "on its face" covered by the contract. United Steel Workers v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403; Local Union No. 483 v. Shell Oil Co., (7th Cir., September 22, 1966) 369 F.2d 526; School District No. 46 v. Del Bianco, 68 Ill.App.2d at page 154, 215 N.E.2d at page 29. The Uniform Arbitration Act, adopted in Illinois in 1961, provides for the court to determine arbitrability if one of the parties denies it has agreed to arbitrate. Ill. Rev.Stats. (1963) Ch. 10, Sec. 102(a). In accordance with this statutory policy, the District Court correctly found that this claim was not on its face governed by the arbitrability clause of the contract, so that it was not referable to arbitration.

This particular contract does not contain any broad clause providing for arbitration of all disputes between the parties as to the meaning, interpretation and application of the contract, in contradistinction to the broad arbitration clauses involved in United Steel Workers v. American Manufacturing Co., 363

---

* Defendant also complained of the vacation pay plaintiffs had accorded their employees from March 1, 1963, to May 31, 1963, when plaintiffs were still conduct-

ing the business. Pursuant to paragraph 2 of the supplemental agreement, plaintiffs submitted that dispute to arbitration before judgment below was entered.

U.S. 564, 565, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steel Workers v. Warrior & Gulf Co., 363 U.S. 574, 576, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steel Workers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 594, 80 S.Ct. 1358, 4 L.Ed.2d 1424; and Lichter v. Goss, 163 F.2d 1000, 1002 (7th Cir., 1947).

■ Here the arbitration clause was expressly limited to the period involving the conduct of the business being sold from March 1, 1963, to May 31, 1963, so that the dispute involving vacation pay from June 1, 1963, to October 1, 1963, is outside the scope of this provision. It should be noted, too, that the sellers were to submit their accounting statement "within fifteen (15) days from the date hereof [May 31, 1963]", and that limited time would not encompass vacation pay from June 1, 1963, to October 1, 1963.

Defendant's objection to the plaintiffs' accounting was directed at the "inclusion of vacation pay for * * * [plaintiffs'] employees during this cash accounting period and the unpaid portion thereof as of May 31, 1963 involving the sum of $43,998.83." However, there was no "unpaid portion" of any vacation pay in the March 1, 1963—May 31, 1963, "cash accounting period." The dispute here is with respect to vacation pay paid by defendant to its own employees after the cash accounting period and after plaintiffs had terminated their "conduct of the business." Defendant's objection as to the vacation pay it gave after June 1st was not an objection to the accounting within the period specified in the contract; therefore it falls outside the arbitration clause.

■ We look with favor upon arbitration as a means of removing contentions from the area of litigation. Hence if the scope of this arbitration

agreement were "fairly debatable" or "reasonably in doubt", then its construction should go to the arbitrator. School District No. 46 v. Del Bianco, 68 Ill.App. 2d 145, 154, 155, 215 N.E.2d 25, 29, 30 (2d Dist., 1966). But as the Del Bianco case also acknowledges, the remedy of arbitration should be refused by the court where there is no agreement to arbitrate (68 Ill.App.2d at page 156, 215 N.E.2d at page 31). It is unquestionably clear that this contract is not susceptible to a construction that sellers were bound to arbitrate defendant's claim to offset vacation pay for the period from June 1, 1963, to October 1, 1963. Under paragraph 2 of the supplemental agreement arbitration was confined to disputes over "an accounting of the [plaintiffs'] conduct of the business being sold from March 1, 1963 to May 31, 1963." There was simply no agreement to arbitrate with respect to the period thereafter.

■ The Declaratory Judgment Act (28 U.S.C. § 2201) empowered the District Court to declare the rights of the parties with respect to the vacation pay defendant gave its employees after the May 31st closing. We agree that such payments were not compelled by plaintiffs but were made voluntarily by defendant for its own benefit. The purchase agreement provided "all of the terms, provisions and conditions with respect to * * * [the] proposed purchase and sale." Defendant has pointed to nothing in that agreement or the supplemental agreement supporting its claim to the $35,000 vacation payments it made to its employees after the closing date. Under the purchase agreement and the supplemental agreement, plaintiffs were not obligated to reimburse defendant for the post-closing vacation pay.

Affirmed.