**Marco Antonio MARCHETTO and Isabella Marchetto, Plaintiffs,**

v.

**DeKALB GENETICS CORPORATION, DeKalb Energy Company, DeKalb–Pfizer Genetics, and Pfizer Genetics Inc., Defendants.**

**No. 88 C 10842.**

United States District Court,
N.D. Illinois, E.D.

May 9, 1989.

Kurt L. Schultz, W. Gordon Dobie, Kyle L. Harvey, Winston & Strawn, Chicago, Ill., for plaintiffs.

William O. Fifield, Geraldine M. Alexis, Darlene A. Vorachek, Gail C. Washington, Sidley & Austin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiffs Marco Antonio Marchetto and Isabella Marchetto ("the Marchettos") brought this action against defendants DeKalb Genetics Corporation ("DeKalb Genetics"), DeKalb Energy Company ("DeKalb Energy"), DeKalb–Pfizer Genetics and Pfizer Genetics Inc. ("Pfizer Genetics") (collectively, "the defendants") claiming they breached and tortiously interfered with a shareholder agreement. Jurisdiction is based on 28 U.S.C. § 1332. The defendants move to dismiss under Fed.R. Civ.P. 12(b)(1).

## FACTS

The parties to this dispute are shareholders of DeKalb Italiana S.p.A. ("DeKalb Italiana"). Complaint ¶ 1. DeKalb Italiana is an Italian corporation engaged in the business of manufacturing and selling agricultural and vegetable products. *Id.* at ¶ 12. The company was formed in 1963 as a joint venture between DeKalb Agricultural Association, Inc. ("DeKalb Agricultural") and two Italian citizens, Antonio and Sergio Marchetto ("the Marchetto Group"). At the time of its incorporation, DeKalb Agricultural and the Marchetto Group each owned fifty percent of the outstanding common stock of DeKalb Italiana. *Id.* at ¶ 13. They also entered into a shareholder agreement that restricted a shareholder's ability to transfer shares without the consent of the remaining shareholders and without offering the other shareholders the opportunity to purchase the shares. *Id.* at ¶ 15. The agreement was later amended to provide for arbitration of any shareholder disputes by a panel of arbitrators in Rome, Italy. Marchetto Response, Ex. B.

DeKalb Agricultural subsequently changed its name to DeKalb Corporation ("DeKalb"). *Id.* at ¶ 13. On July 15, 1982, DeKalb sold its shares in DeKalb Italiana to DeKalb–Pfizer Genetics, a partnership formed between DeKalb and Pfizer Genet-

ics, Inc. *Id.* at ¶ 16. DeKalb sold its shares without the knowledge or consent of the Marchetto Group and without offering the Marchetto Group the opportunity to purchase the shares. *Id.* Six years later, DeKalb reorganized into three publicly traded companies: DeKalb Energy, the successor corporation to DeKalb, DeKalb Genetics, and Pride Petroleum Services, Inc. *Id.* at ¶¶ 6, 7. DeKalb Genetics replaced DeKalb as a partner in DeKalb–Pfizer Genetics. *Id.* at ¶ 17.

The Marchettos now claim that the transfers of DeKalb Italiana stock effected by the defendants violated the shareholder agreement. Count I of the complaint alleges a breach of the agreement. Count II alleges the defendants tortiously interfered with the agreement. The defendants move to dismiss on the basis of the arbitration clause. They claim this dispute should be resolved in Italy.

## DISCUSSION

When considering a motion to dismiss, the court views the allegations of the complaint in the light most favorable to the plaintiff and accepts as true all well pleaded material facts. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir.1976); *Bruss Co. v. Allnet Communications Services, Inc.,* 606 F.Supp. 401, 404 (N.D.Ill. 1985). The complaint will not be dismissed unless it is beyond doubt that no facts are alleged to support the claim. *Id.*

■ The Federal Arbitration Act ("the Arbitration Act"), 9 U.S.C. § 1 *et seq.,* governs the enforcement, interpretation and validity of arbitration clauses in commercial contracts. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Snyder v. Smith,* 736 F.2d 409, 417 (7th Cir.1984); *Zell v. Jacoby-Bender, Inc.,* 542 F.2d 34, 37 (7th Cir. 1976). The Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. This language creates a presumption in favor of arbitration. *Mitsubishi Motors*

*Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed. 2d 444 (1985); *Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. at 941–42; *Snyder,* 736 F.2d at 417; *In re Oil Spill by Amoco Cadiz,* 659 F.2d 789, 795 (7th Cir.1981). This means courts must vigorously enforce arbitration clauses in commercial contracts. *Id.* Any doubts regarding the validity of an arbitration clause must be resolved in favor of arbitration. *Id.*

■ The federal policy favoring arbitration applies with special force in the area of international commerce. *Mitsubishi Motors Corp.,* 473 U.S. at 629–31, 105 S.Ct. at 3355–56; *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 516–17, 94 S.Ct. 2449, 2455–56, 41 L.Ed.2d 270 (1974); *In re Oil Spill by Amoco Cadiz,* 659 F.2d at 795; *Karlberg European Tanspa, Inc. v. JK–Josef Kratz Vertriebsgesellschaft,* 618 F.Supp. 344, 347 (N.D.Ill.1985). In 1970, the United States became a party to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). 3 U.S.T. 2517, T.I.A.S. No. 6997 reprinted in 9 U.S.C. § 201 (1980 Supp.); *Scherk,* 417 U.S. at 520 n. 15, 94 S.Ct. at 2457–58 n. 15. The Convention and its enabling legislation, 9 U.S.C. § 201 *et seq.,* were designed to encourage the arbitration of international commercial disputes and to unify the standards by which agreements are enforced. *Scherk,* 417 U.S. at 520 n. 15, 94 S.Ct. at 2457–58 n. 15. By acceding to the Convention, the United States joined other signatory nations in proclaiming a willingness to enforce arbitration clauses in international commercial agreements. *Id.* at 516 n. 10, 94 S.Ct. at 2451 n. 10. *Rhone Mediterranee Compagnia v. Achille Lauro,* 712 F.2d 50, 53–54 (3d Cir.1983).

■ The strong presumption favoring enforcement of arbitration clauses in international commercial agreements divests this court of substantial discretion in deciding whether to order arbitration. *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1144–45 (5th Cir.1985); *Snyder,* 736 F.2d at 418, 419; *Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186–87

(1st Cir.1982); *In re Oil Spill by Amoco Cadiz,* 659 F.2d at 795–96. The Convention requires this court to inquire whether (1) there is a written arbitration agreement; (2) the agreement provides for arbitration in a signatory country; (3) the agreement arises out of a commercial legal relationship; and (4) the commercial transaction has a reasonable relationship to a foreign state. *Sedco,* 767 F.2d at 1144–45; *Ledee,* 684 F.2d at 186–87. If these factors are met, arbitration is mandatory. *Id.*

■ There is no dispute that these factors are present in this case. Italy is a signatory country. 9 U.S.C. § 201. The shareholder agreement unquestionably embodies a legal relationship. The arbitration clause was incorporated into this agreement through a written amendment. Moreover, the allegedly unlawful transfers of DeKalb Italiana stock have a reasonable relationship to Italy because they involve an Italian company and allegedly damaged an Italian shareholder group.

The Marchettos ignore these factors. They argue that the arbitration clause is unenforceable under Article II(3) of the Convention. 9 U.S.C. § 201. Article II(3) provides:

> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall at the request of one of the parties, refer the parties to arbitration, unless it finds that said agreement is null and void, inoperative or incapable of being performed.

*Id.* The Marchettos contend this arbitration clause is incapable of performance because Italian law will not enforce an arbitration agreement where, as here, three of the four defendants are not parties to the agreement. They also argue that their claim for tortious interference in Count II is nonarbitrable under Italian law because it is beyond the scope of the arbitration clause.

■ These arguments are without merit. The possibility that Italian law might divest a panel of Italian arbitrators of jurisdiction is not determinative of this court's duty to enforce an otherwise valid arbitration agreement. *Mitsubishi Motors Corp.,* 473 U.S. at 629–31, 105 S.Ct. at 3355–56; *Scherk,* 417 U.S. at 517–19, 94 S.Ct. at 2456–57; *Rhone Mediterranee Compagnia,* 712 F.2d at 53–54. Section 203 of the Act provides that:

> [a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.

9 U.S.C. § 203. This means that the validity of an arbitration agreement is determined by reference to the Arbitration Act and the federal substantive law of arbitrability. *Moses H. Cone Memorial Hospital,* 460 U.S. at 24, 103 S.Ct. at 941; *Scherk,* 417 U.S. at 520, 94 S.Ct. at 2457; *Rhone Mediterranee Compagnia,* 712 F.2d at 54; *Zell,* 542 F.2d at 37.

■ Federal law permits non-parties to an arbitration agreement to participate in the arbitration proceedings. *Moses H. Cone Memorial Hospital,* 460 U.S. at 20, 103 S.Ct. at 939 citing *C. Itoh & Co. v. Jordan Int'l Co.,* 552 F.2d 1228, 1231–32 (7th Cir.1977). DeKalb Energy is a party to the shareholder agreement and arbitration clause because it is the successor corporation to DeKalb Agricultural. Because the Marchettos and DeKalb Energy are parties to the arbitration clause, the other defendants may also be joined in the arbitration proceeding. *Id.*

■ The presumption favoring arbitrability also applies to the Marchettos' tort claim. Count II alleges that the defendants intentionally and willfully interfered with the shareholder agreement. The arbitration clause provides for a panel of Italian arbitrators to resolve all disputes pertaining to or arising out of the agreement or a breach of the agreement. This arbitration clause is open-ended. *See Sauer–Getriebe KG v. White Hydraulics, Inc.,* 715 F.2d 348, 350 (7th Cir.1983). Because the Marchettos' tort claim alleges that the transfer of shares violated the shareholder agreement, it falls within the scope of the arbitration clause. *Id.* However, even assuming that a question of fact exists on this issue, the scope of the arbitration

clause is itself a proper question for arbitration. *Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941–42; *Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.*, 643 F.2d 863, 869 (1st Cir. 1981); *Butler Products Co. v. Uni Strut Corp.*, 367 F.2d 733, 736 (7th Cir.1966). Therefore, this court is without authority to sever the Marchettos' tort claim and hold that it is nonarbitrable. *Id.*

The Marchettos respond by arguing that even under federal law, this arbitration clause is unenforceable. They rely on *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, —— U.S. ——, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), for the proposition that an arbitration agreement is unenforceable where claims are asserted against entities that are not formal parties to the agreement. In *Volt*, the Supreme Court affirmed a California court's decision to stay arbitration pending resolution of related litigation involving entities that were not parties to the arbitration agreement. *Id.* 109 S.Ct. at 1254–55. The California court based its decision on the California rules of arbitration. *Id.* at 1253. The Supreme Court held that the California rules were not preempted by the Arbitration Act because the parties specifically incorporated the California rules into their arbitration agreement. *Id.* at 1254–55. *Volt* reaffirms the established principle that arbitration agreements are contracts, enforceable according to their terms. *Id.* It does not upset the rule that non-parties to an arbitration agreement may participate in arbitration proceedings. *Moses H. Cone Memorial Hospital*, 460 U.S. at 20, 103 S.Ct. at 939; *C. Itoh & Co.*, 552 F.2d at 1231–32. Accordingly, *Volt* is restricted to its facts and has no bearing on this dispute.

Finally, the Marchettos argue that federal law prohibits the enforcement of an arbitration agreement where it is clear foreign law divests the arbitrators of jurisdiction. This is another way of saying that the validity of an arbitration agreement is determined by the law of the place of arbitration. The Supreme Court has addressed this argument and flatly rejected it:

There is no reason to assume at the outset of the dispute that international arbitration will not provide an adequate mechanism. To be sure, the international arbitral panel owes no prior allegiance to the legal norms of particular states; hence it has no direct obligation to vindicate their statutory dictates. The tribunal, however, is bound to effectuate the intentions of the parties.

*Mitsubishi Motors Corp.*, 473 U.S. at 636, 105 S.Ct. at 3358–59. Underlying the Supreme Court's willingness to enforce arbitration agreements is the assumption that signatory nations to the Convention will honor arbitration agreements and reject challenges to arbitration based on legal principles unique to the signatory nation. *Scherk*, 417 U.S. at 520 n. 15, 94 S.Ct. at 2457–58; *Rhone Mediterranee Compagnia*, 712 F.2d at 53–54. Italy is a signatory nation and presumably will honor this arbitration clause. *Rhone Mediterranee Compagnia*, 712 F.2d at 54; *Matter of Ferrara S.p.A.*, 441 F.Supp. 778, 781 (S.D.N.Y. 1977).

■ This conclusion is reinforced by the defendants' Italian law expert who states that Italian courts recognize that the Convention vests Italian arbitration panels with plenary jurisdiction over international commercial disputes. Defendants' Reply Mem., Ex. A ¶ 8. Once an Italian arbitration panel asserts jurisdiction in an international commercial matter, Italian courts lose their concurrent jurisdiction. *Id.* The Marchettos also rely on an affidavit of an Italian law expert. Their affidavit alleges that an Italian arbitration panel would not exercise jurisdiction over this dispute. Marchetto Response Mem. Ex. C. At most, this affidavit creates a question of fact regarding the arbitration panel's jurisdiction. This is a subject that must be addressed by the Italian arbitration panel. *Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941–42; *Societe Generale de Surveillance*, 643 F.2d at 869; *Butler Products Co.*, 367 F.2d at 736.

## CONCLUSIONS

The Marchettos have failed to support their argument that the arbitration clause

is incapable of performance under Article II(3) of the Convention. The court finds that the arbitration clause is valid and enforceable. Accordingly, this action is dismissed without prejudice. *Ledee,* 684 F.2d at 187; *McCreary Tire & Rubber Co. v. CEAT S.p.A.,* 501 F.2d 1032, 1038 (3d Cir. 1974); *McDonnell Douglas Corp. v. Kingdom of Denmark,* 607 F.Supp. 1016, 1020 (E.D.Mo.1985).