UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEW RIVER MANAGEMENT COMPANY,
L.L.C.,

*Plaintiff-Appellee,*

v.

HENRY SCHEIN, INCORPORATED,
*Defendant-Appellant.*

No. 00-1946

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-00-212-7)

Argued: April 3, 2001

Decided: May 25, 2001

Before WIDENER, WILKINS, and LUTTIG, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Anthony Francis Troy, MAYS & VALENTINE, L.L.P.,
Richmond, Virginia, for Appellant. Harry Margerum Johnson, III,
HUNTON & WILLIAMS, Richmond, Virginia, for Appellee. **ON
BRIEF:** James C. Roberts, Alan D. Wingfield, MAYS & VALEN-
TINE, L.L.P., Richmond, Virginia, for Appellant. Jennifer L. McClel-
lan, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellee New River Management Company ("New River") filed suit against appellant Henry Schein, Inc. ("Schein") for breach of a stock purchase agreement. Schein now appeals the district court's denial of its motion to stay the litigation pending arbitration. We affirm on the reasoning of the district court.

I.

Schein entered into an agreement (the "Agreement") to acquire stock in a distributor of pharmaceutical products, Biological & Popular Culture, Inc., from New River and a third party, Chiron Corporation ("Chiron"). Schein paid $65 million in "Initial Consideration" to New River and Chiron, and also agreed to pay up to $75 million in "Contingent Consideration" over five years.

Section 2.06(a) of the Agreement sets forth a formula for calculating the contingent consideration due annually, based solely on "the Gross Profit Percentage, the Threshold Gross Profits and the Current Year Gross Profits of [Schein] for the immediately preceding fiscal year." J.A. 30. The Agreement requires Schein to pay seventy percent of the total contingent consideration to New River and thirty percent to Chiron on March 15 of each of the five years following the transaction. In addition, Schein is required to provide statements of the figures used to calculate the contingent consideration, work papers showing the calculations, and certification by an accounting firm that the contingent consideration has been computed in accordance with the formula in Section 2.06(a).

Schein's first contingent consideration payment was due on March 15, 2000. Schein calculated that it owed approximately $1.2 million in contingent consideration to Chiron and $2.8 million to New River.

In accordance with the Agreement, Schein paid the contingent consideration owed to Chiron and attached the appropriate paperwork supporting the computation. However, believing it had a $10 million indemnification claim against New River for alleged misrepresentations in the Agreement, Schein offset New River's contingent consideration payment by the amount of the indemnification claim, and accordingly paid no contingent consideration to New River. Schein claims that the offset was justified because Section 9.03(d) of the Agreement provides that "any indemnification . . . shall be deemed to be an adjustment of the Purchase Price," which, in turn, is defined in Section 1.67 to "consist of the Initial Consideration and the Contingent Consideration." J.A. 12, 56.

New River filed suit alleging that Schein breached the Agreement by failing to pay contingent consideration or provide the required paperwork on March 15, 2000. Schein moved to stay the litigation, arguing in the district court, as it does on appeal, that the Agreement requires arbitration of any dispute regarding the amount of contingent consideration due. The district court denied Schein's motion, and this appeal followed.

## II.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "embodies a federal policy favoring arbitration" of disputes. *Drews Distrib., Inc.* v. *Silicon Gaming, Inc.*, No. 00-1643, 2001 WL 305659 (4th Cir. Mar. 29, 2001). Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs.* v. *Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citations omitted). Thus, "the first task of a court" asked to stay litigation pending arbitration of a dispute "is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Schein argues that an arbitration clause governing the instant dispute is found in Section 2.06(b), which provides, in pertinent part:

> On or before March 15 of each of 2000, 2001, 2002, 2003 and 2004, the Purchaser shall prepare and deliver to the

Sellers a statement (showing in reasonable detail the calculations) of the Gross Profits Percentage, the Threshold Gross Profits and the Current Year Gross Profits of the Purchaser for the immediately preceding fiscal year and the amount of the Contingent Consideration payable in respect of such year, together with a certificate from the Purchaser's chief financial officer and a confirmation from BDO Seidman LLP or another nationally recognized independent accounting firm to the effect that such statements have been prepared and such amount computed in accordance with this Agreement including Section 2.06 and Schedule 1.27. . . . If either Seller shall have any objection to either of such statements, New River . . . shall deliver to Purchaser a written notice describing in detail its objection within 30 days after receiving such statements. If New River does not deliver such notice to the Purchaser within such 30-day period, the Purchaser's statement . . . [of the] Contingent Compensation then payable shall be final and binding. The Purchaser and the Sellers' Representative shall use their reasonable best efforts to resolve any such objections. *If a final resolution of such objections is not achieved within 15 days after the Purchaser has received a notice of objections, the Purchaser and the Sellers' Representative will jointly select a nationally recognized independent accounting firm mutually acceptable to them to resolve any remaining objections. . . . The accounting firm so selected shall, upon a review of the statements and work papers presented by the Purchaser and New River's objections thereto, resolve in accordance with this Section 2.06 and Schedule 1.27 any such objections that have not been resolved by the Purchaser and the Sellers' Representative in writing as promptly as practicable after such firm's selection and in any event within 45 days of its selection. . . .*

J.A. 29-30 (emphasis added).

The district court held that Section 2.06(b) constitutes an enforceable arbitration clause because it calls for an independent accountant to "*resolve* any . . . objections" to the computation of contingent consideration due. J.A. 181 (emphasis added). *See also McDonnell Doug-*

*las Fin. Corp.* v. *Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988) (explaining that a provision constitutes an arbitration clause if its language "manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution"); *Butler Prods. Co.* v. *Unistrut Corp.*, 367 F.2d 733, 734-36 (7th Cir. 1966) (treating as an arbitration clause a provision that required the submission of disputes to an accounting firm for resolution). Moreover, the district court concluded that Section 2.06(c) makes the resolution of the accountant final and binding since it requires the contingent consideration to be paid within "five days after resolution of the objections pursuant to Section 2.06(b)." J.A. 30.

Despite holding that Section 2.06(b) is an arbitration clause, however, the district court denied Schein's motion to stay this litigation because it concluded that Section 2.06, by its terms and structure, provides for arbitration *only* of disputes over the computation of contingent consideration pursuant to the formula in Section 2.06(a). The arbitration clause at issue is not the type of broad provision that "refer[s] all disputes arising out of a contract to arbitration." *McDonnell Douglas*, 858 F.2d at 832 (discussing the difference between broad and narrow arbitration clauses and explaining that a court interpreting a narrow clause must "consider whether the [dispute at] issue is on its face within the purview of the clause"). Rather, the narrow scope of the arbitration clause confines the role of the accountant to "review-[ing] the statements and work papers presented by [Schein]" and "resolv[ing] in accordance with this Section 2.06 and Schedule 1.27 any . . . objections" raised by New River to the calculation made pursuant to Section 2.06(a). J.A. 30. Neither the materials submitted to the accountant for review nor the provisions of the Agreement governing the accountant's resolution of disputes contain any reference at all to indemnification. Thus, the district court held that the arbitration clause does not compel the arbitration of this case, the resolution of which depends not on the proper computation under Section 2.06(a), but on an indemnification claim. J.A. 185.

After reviewing the parties' briefs and the applicable law, and having had the benefit of oral argument, we conclude that the district court correctly denied the motion to stay, and we affirm on the reasoning of the district court. *See New River Mgm't Co.* v. *Henry Schein, Inc.*, No. CA-00-212-7 (W.D. Va. June 27, 2000).

## *CONCLUSION*

For the reasons stated herein, we affirm the judgment of the district court.

*AFFIRMED*