**SOCIETE GENERALE de SURVEIL-LANCE, S.A., Plaintiff, Appellee,**

v.

**RAYTHEON EUROPEAN MANAGE-MENT AND SYSTEMS COMPANY, Defendant, Appellant.**

No. 80–1517.

United States Court of Appeals, First Circuit.

Argued Jan. 5, 1981.

Decided Feb. 25, 1981.

Howard E. Hensleigh, Bedford, Mass., for defendant-appellant.

Laurence M. Johnson, Boston, Mass., with whom Robert W. Meserve, Andrea L. Davis and Palmer & Dodge, Boston, Mass., were on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, MAR-KEY,* Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

This case involves a disagreement between Raytheon Management Systems ("REMSCO") and Societe Generale de Surveillance ("SGS") about whether, or where, they must arbitrate a dispute arising under a contract between them for the testing of Hawk missiles. REMSCO sought to arbitrate the dispute before the American Arbitration Association in Boston. SGS then brought a diversity action in the United States District Court in Massachusetts seeking an order under Massachusetts General Laws, ch. 251, §§ 2, 15,[1] restraining REMSCO from proceeding with that arbitration. The district court granted the temporary restraining order that SGS sought and several months later denied REMSCO's motion to modify or to vacate its order. REMSCO appeals.

This court has jurisdiction under 28 U.S.C. § 1292(a)(1), which provides for appeals of "orders ... granting, continuing, ... or refusing to dissolve or modify injunctions ...."[2] We affirm the decision

---

* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

1. Chapter 251 of the Massachusetts General Laws § 2(b) provides:

"Upon application, the superior court may stay an arbitration proceeding commenced or threatened if it finds that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily determined. And if the court finds for the applicant it shall order a stay of arbitration; otherwise the court shall order the parties to arbitration."

2. Appealability under 28 U.S.C. § 1292(a)(1) depends first on whether the relief granted by the district court was a temporary restraining order (the relief initially requested and the caption of the December 4, 1979 order) or a preliminary injunction. Temporary restraining orders usually do not fall within the interlocutory appeals statute because they are of short duration, often *ex parte*, and terminate with the ruling on preliminary injunction. 11 Wright & Miller, *Federal Practice and Procedure: Civil*, § 2962 at 616–622 (1973). Regardless of name, the two orders here, both entered after notice and hearing, have enjoined REMSCO for more than a year from proceeding with arbitration in

of the district court and remand the case for possible further proceedings consistent with this opinion.

## I.

On July 10, 1975, REMSCO, a Massachusetts firm, and SGS, a French company, entered into a sub-contract under which SGS agreed to provide transportation, and other related services, for NATO Hawk missiles. This sub-contract (which we shall call the Basic Contract) was written on a two page Raytheon Purchase Order Form, to which were attached fifteen typewritten pages of provisions and fifty other pages of typed and printed exhibits and addenda. The Purchase Order is numbered 11.1108.-02.0144. The typed statements on the form state the basic subject matter ("transportation and . . . other services"), refer the reader to the attached sixty-five pages for the terms of the contract, delete the printed conditions on the back of the form,[3] and state that the number of the Purchase Order (11.1108.02.0144) "shall be used in all references and correspondence regarding to this agreement". The subsequent sixty-five pages set forth a series of Articles spelling out the nature of the work, and provided for price ceilings, credit, security measures, insurance, audits, communication, disputes, and other basic matters. Article 16 provides that the Basic Contract will be "construed and interpreted in accordance with the law of the Republic of France". Article 17.2 provides that "all disputes . . . arising in connection with" the Basic Contract "shall be finally settled by arbitration" under the rules of the International Chamber of Commerce in Lausanne, Switzerland. The Basic Contract further provides that any future changes must be in writing.

Over the next few years, the parties entered into a series of "change orders". Typically, the change order would be written on a Raytheon Purchase Order Form. In the upper left of the form, under the *printed* words "purchase order number" the *typed* Basic Contract number (11.1108.02.-0144) would appear. In a box next to it titled "c. o. number" the typed number of the change order would appear. At the bottom of the page, among other printed statements, the *printed* words "ship subject to the terms and conditions on the face and back hereof" appeared. Apparently often, or at least sometimes, this latter printed instruction was expressly countermanded by a typed statement. For example, Change Order No. Six, entered into on December 16, 1976, has the typed statement on its face that "this change . . . does not

---

Boston and have had the effect of a preliminary injunction. SGS has had and continues to have the benefit of all the relief it ultimately sought. Thus, in this instance the temporary restraining order can be considered a preliminary injunction for purposes of appeal. *State of Maine v. Fri,* 483 F.2d 439 (1st Cir. 1973); 9 Moore's *Federal Practice* ¶ 110.20[5] at 253–255 (2d ed. 1970).

Second, some courts have questioned whether an appeal lies from an order enjoining a party from proceeding with arbitration, given the fact that an order sending a case to arbitration has been held not to constitute an injunction for purposes of § 1292(a)(1). *See, e. g., Lummus Company v. Commonwealth Oil Refining Company,* 297 F.2d 80, 86 (2d Cir.), *cert. denied sub nom., Dawson v. Lummus Co.,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *Greater Continental Corporation v. Schecter,* 422 F.2d 1100, 1102 (2d Cir. 1970). In this circuit, however, there is authority allowing an appeal from an order staying a party from proceeding with arbitration, at least where that order does not constitute a preliminary part of a larger case seeking determination by the court of the underlying dispute, but rather where a request for the stay constitutes the entire relief sought. *Lummus Co. v. Commonwealth Oil Refining Co., Inc.,* 280 F.2d 915, 917 (1st Cir.), *cert. denied,* 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960). There are strong reasons for holding that an order *sending* a case to arbitration is not an injunction in light of the policies underlying § 1292(a)(1) and the Federal Arbitration Act. These are set out by Chief Judge Coffin in *New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183, 186–187 (1st Cir. 1972). Those same policies here underlie a holding of appealability, for the district court's decisions effectively deprived at least one of the parties to the dispute of one of the principal objects for which it allegedly bargained, i. e. a relatively speedy and inexpensive preliminary resolution of any controversy.

**3.** "The terms and conditions of purchase on the reverse of the cover page hereto are deleted in their entirety."

change the Terms and Conditions." Thus, even though Change Order No. Six, and subsequent change orders were written on a new Raytheon form—one with printed terms on the back providing for arbitration in Massachusetts—the terms of the Basic Contract, not the printed terms on the back of the form, appeared to govern.

In December 1976 the parties signed a Memorandum of Understanding which set forth certain changes in the work provided by the Basic Contract, particularly with respect to management services, the rate of exchange, and payment. The Memorandum states that the subject matter "will form the basis of a firm definitive contract" to be executed before January 31, 1977. That memorandum was attached to Change Order No. 7. That change order has the number of the Basic Contract (11.1108.02.0144) typed in the upper left hand corner; it has "7" typed under the printed legend "c. o. number"; it has the same printed terms on the face and back as No. 6; but the typing on the front simply refers to the Memorandum of Understanding and does not say that other terms and conditions remain the same.

On June 12, 1977, the parties agreed to Change Order No. 8. That change order also has the same Basic Contract number in the upper left hand corner; it has the number "8" typed under the printed legend "c. o. number"; it has the same printed terms on the face and back as No. 6. It provides, however, not for the transportation of missiles but for their field testing, inspection and evaluation. And, like order No. 6, but unlike order No. 7, it has the typed statement on its face: "All other terms and conditions set forth in this contract remain unchanged."

Subsequently, a dispute arose in which REMSCO claimed that SGS was negligent in its performance under Change Order No. 8. After informal efforts to resolve the dispute failed, REMSCO sought arbitration in Switzerland under Article 17.2 of the Basic Contract. SGS opposed this arbitration, however, arguing in a letter to REMSCO that the testing and other services called for by Change Order No. 8 were different from the transportation and other services described in the Basic Contract—to the point where the arbitration clause of the Basic Contract did not apply. REMSCO then sought arbitration in Boston, presumably on the theory that if Article 17.2 of the Basic Contract did not apply, then the printed arbitration clause on the back of Change Order No. 8 must apply. SGS responded by bringing this action in the district court under Massachusetts law seeking to enjoin the Boston arbitration. Judge McNaught entered a temporary restraining order enjoining the Boston arbitration on December 4, 1979. He found that SGS would probably succeed on the merits of its action. He wrote that it is "logical . . . to claim that, if arbitration is to be held at all, it must be held in these circumstances under Article 17.2 of the original contract. It is not inconsistent to urge further that, by reason of the nature of the services called for by the change order, no arbitration is required should a dispute arise."

On December 17, 1979, REMSCO filed a motion to dissolve the temporary restraining order or in the alternative to "condition any . . . injunction . . . upon SGS's participation in . . . arbitration in Lausanne Switzerland" in accordance with the Basic Contract. Judge McNaught denied this motion in July 1980. In September 1980 REMSCO renewed its motion, specifically requesting the court to "dissolve the temporary restraining order and compel arbitration in either Boston, Massachusetts, or Lausanne, Switzerland." This motion was denied on September 16, 1980. At the same time REMSCO filed with the International Chamber of Commerce a demand for arbitration in Switzerland. SGS filed a response in which it denied that the arbitration clause in the original contract applied to the present controversy but apparently was prepared to allow the arbitration to proceed, reserving the right to argue that Article 17 of the Basic Contract does not apply. Thus, at the present time Judge McNaught's restraining order, preventing arbitration before the American Arbitration Association in Boston remains in effect,

while some form of arbitration is proceeding (with reservations) in Switzerland.

## II.

In appealing from Judge McNaught's refusal to dissolve or to modify the temporary restraining order, enjoining arbitration before the American Arbitration Association in Boston, REMSCO makes three basic arguments. First, it claims that the district court erred as a matter of law in issuing the temporary restraining order, for the Federal Arbitration Act, not Massachusetts state law, applies to this proceeding, and that Act does not grant the court the power to stay arbitration proceedings. Second, it claims that, beginning with Change Order No. 7, the parties created a new contract; thus the Basic Contract (and in particular Article 17) does not apply to Change Order No. 8; rather, the printed arbitration provision on the back of Change Order No. 8 applies. Third, in any event, if the Basic Contract applies, the district court should have ordered arbitration in Switzerland under Article 17. We shall consider each of these arguments in turn.

## A.

■ We agree with REMSCO that the Federal Arbitration Act applies to this dispute. The Act applies to a

"written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ...." 9 U.S.C. § 2.

There is a strong judicial policy favoring the submission of contractual disputes to arbitration—particularly under the provisions of the Federal Arbitration Act, which embodies the agreements reached in an international convention on arbitration.[4] *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–520, 94 S.Ct. 2449, 2452–2457, 41 L.Ed.2d 270 (1974). Thus, the courts have held that the term "commerce" in this provision of the Act refers to interstate or foreign commerce and is to be broadly construed. *See, e. g., Weight Watchers of Quebec Ltd. v. Weight Watchers Int'l Inc.*, 398 F.Supp. 1057 (E.D.N.Y.1975); *Caribbean Steamship Co., S.A. v. La Societe Navale Caennaise*, 140 F.Supp. 16 (E.D.Vir.1956). In this case, both the Basic Contract and Change Order No. 8 "evidenc[e] ... a transaction involving [foreign] commerce." The contract, prepared in New Hampshire, is between an American and a French company, and it concerns the transportation and testing in Europe of missiles made in California and Massachusetts. It clearly covers trade "between citizens of this country and subjects of a foreign country ...." *Caribbean Steamship Co., S.A. v. La Societe Navale Caennaise, supra*, 140 F.Supp. at 21.

■ We disagree, however, with REMSCO's claim that the Act removes the district court's power to enjoin the Massachusetts arbitration. The Act supplants only that state law inconsistent with its express provisions. *Litton RCS v. Pennsylvania*

---

4. In 1958, a special conference of the United Nations Economic and Social Council adopted the Convention on the Recognition and Enforcement of Foreign-Arbitral Awards. In 1970 the United States acceded to the treaty, [1970] 3 U.S.T. 2517, T.I.A.S. No. 6997, and Congress passed Chapter 2 of the United States Arbitration Act, 9 U.S.C. § 201 *et seq.*, in order to implement the Convention. 9 U.S.C. § 201 provides unequivocally that the Convention "shall be enforced in United States courts in accordance with this chapter."

The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to

arbitrate are observed and arbitral awards are enforced in the signatory countries. See Convention on the Recognition and Enforcement of Foreign Arbitral Awards, S. Exec. Doc. E, 90th Cong., 2d Sess. (1968); Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 70 Yale L.J. 1049 (1961). Article II(1) of the Convention provides:

"Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration."

*Turnpike Commission*, 376 F.Supp. 579 (E.D.Penn.1974), *aff'd mem. Litton Business Systems, Inc. v. Pennsylvania Turnpike Com.*, 511 F.2d 1394 (3d Cir. 1975); *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). There is no such inconsistency here. The Act expressly provides federal courts with the power to order parties to a dispute to proceed to arbitration where arbitration is called for by the contract. 9 U.S.C. § 3. To allow a federal court to enjoin an arbitration proceeding which is *not* called for by the contract interferes with neither the letter nor the spirit of this law. Rather, to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present. *A.B.C., Inc. v. American Federation of Television & Radio Artists*, 412 F.Supp. 1077 (S.D.N.Y.1976).[5] In fact, were the law read to prevent a court from enjoining an arbitration proceeding it might actually interfere with arbitration—in the unusual case, arguably present here, where one such arbitration proceeding may interfere with another. Thus, we conclude that the district court had adequate authority under Massachusetts law to stay the Massachusetts arbitration.

### B.

We agree with the district court that SGS is likely to prevail in its claim that Change Order No. 8 is part of the Basic Contract and that it does not form part of a new contract instituted by Change Order No. 7. We note that this issue, under the terms of both the Basic Contract (Article 16) and the Memorandum attached to Change Order No. 7, is to be decided as a matter of French law. While the parties have not briefed French law, a cursory review of its basic principles suggests that courts are free to look to objective indications of the parties' intentions. Rene David, *English Law and French Law, A*

*Comparison*, pp. 100 *et seq.* (1980). *Compare* Restatement of Contracts §§ 235–236. There are numerous indications that the parties intended Change Order No. 8 to be governed by the Basic Contract.

For one thing, there is the obvious fact that both Order No. 7 and Order No. 8 were referred to as *"change"* orders. Both refer, in their upper left hand corners, to the Basic Contract by its number (11.1108.02.-0144). Both have numbers ("7" and "8" respectively) typed under the headings "c. o. number". For another thing, several critical basic matters, such as secrecy, insurance, credit, and audits were dealt with in the Basic Contract but *not* dealt with in the Memorandum attached to Change Order No. 7. These omissions are odd, if the parties had intended Change Order No. 7 to begin an entirely new contractual relationship, but they are not at all odd if the parties intended the Basic Contract to govern except where modified by the terms of the Change Order. Finally, Change Order No. 8, while it refers by number to the Basic Contract, nowhere refers to Change Order No. 7.

On the other hand, Change Order No. 7 does not specifically state that other terms and conditions are to remain the same, and the Memorandum attached to it says that the parties will enter a "definitive contract". Yet, whether Change Order No. 7 was meant itself to constitute that "definitive contract" is unclear. Even if it was so meant, basic terms in the Basic Contract might still be intended to apply. And, Change Order No. 8 may in any event pick up terms from the Basic Contract, for No. 7 might well have been intended to be "definitive" only as to matters within its specific subject matter: the costs of transportation and related services in 1977. On the basis of the information before the district court and before us, it appears likely, under French law, that Change Order No. 8 would be found to be part of the Basic Contract.

---

5. *See also Shinto Shipping Co. v. Fibrex Shipping Co.*, 572 F.2d 1328 (9th Cir. 1978); *Griffin v. Semperit of America, Inc.*, 414 F.Supp. 1384 (S.D.Tex.1976), where federal courts have entertained motions to restrain a party from proceeding to arbitration under the Federal Arbitration Act without rejecting them as illfounded as a matter of law.

If so, Article 17, with its provision for ICC arbitration in Switzerland, at least *arguably* governs the parties' dispute.

Once it is determined that Article 17 of the Basic Contract *arguably* governs this dispute, then it is appropriate to remit the dispute for resolution in the Swiss arbitration. If Article 17, *in fact,* governs the underlying dispute of the parties, then the printed clause on the back of Change Order No. 8 is inconsistent with Article 17. It could not therefore comprise a part of the contract between the parties. Arbitration in Boston, not having been agreed to by the parties, should be enjoined. However, even if Article 17 later turns out not to govern the underlying dispute, referral to Switzerland now is still proper. Whether SGS is correct in contending that the testing of missiles is so different from their transport that Change Order No. 8 (while within the Basic Contract) was meant to be outside the scope of the arbitrability clause is itself a matter for the International Chamber of Commerce arbitrators. The issue of the scope of an arbitration clause in a contract is an appropriate matter for arbitration. *Butler Products Company v. Unistrut Corporation,* 367 F.2d 733 (7th Cir. 1966). In the present instance, the Rules of Conciliation and Arbitration of the International Chamber of Commerce expressly provide that as long as there is in the opinion of the ICC Court of Arbitration "prima facie" an agreement to arbitrate, "the arbitration shall proceed", and "any decision as to the arbitrator's jurisdiction shall be taken by the arbitrator himself." Article 8, Section 3. SGS has entered into arbitration proceedings in Switzerland for the purpose of making this determination. Since the arbitrators there are more likely to be familiar with commercial dealings in this area and with French law, and since the proceedings are under way, the order of the district court enjoining arbitration in Boston is well within its discretion.

### C.

◼ REMSCO argues, however, that if it is determined in Switzerland that Article 17 was not meant to include the *testing* of missiles within its scope, it will be left without recourse to arbitration for the underlying dispute. It is possible that the parties, in agreeing to Change Order No. 8, meant to delete the printed terms on the back of the change order and to make applicable only Article 17 arbitration limited to whatever matters were previously considered to be within Article 17's scope; if Article 17 did not include "testing" disputes, then there would be no arbitration agreement. Yet, REMSCO responds, such an interpretation is inconsistent with its continued efforts to resolve disputes through arbitration, as reflected in the fact that it prints standard arbitration clauses on the back of its forms and that it has made every effort to provide for arbitration in its dealings with SGS.

In support of the view that the back of Change Order No. 8 is deleted no matter what the scope of Article 17 is, the fact that the typed words at the bottom of Change Order No. 8 read "All other terms and conditions set forth in this contract remain unchanged". On the other hand, one might also read the words of Change Order No. 8 as deleting from the back only provisions *inconsistent* with the Basic Contract. On this view, if Article 17 does not provide for arbitration of Change Order No. 8 disputes, then the printed arbitration clause on the back of the form would be perfectly consistent with Article 17 and thus not necessarily deleted.

It is obviously difficult to determine whether, if Article 17's scope is limited, the contract leaves the parties without recourse to arbitration or makes operative the printed clause on the back of Change Order No. 8 (which would then be *consistent* with Article 17). Presumably evidence relating to the history of the parties' dealings, their use of arbitration, and French law would be relevant. But this issue need not be decided now. The district court remains free to reexamine the issue and the appropriateness of its restraining order should there be an authoritative determination by a competent authority elsewhere that Article 17 is so limited.

Nor need the district court now order arbitration in Switzerland. The parties are proceeding under the ICC rules with arbitration there, at least to determine the scope of Article 17 and presumably, if Article 17 is found to apply, the arbitrators will arbitrate the underlying dispute. Should it appear that an injunction is needed to obtain arbitration there, the parties remain free to request the district court to issue it.

*Affirmed and remanded for possible further proceedings consistent with this opinion.*