**L.F. ROTHSCHILD & CO., INCORPORATED, Plaintiff,**

v.

**Marshall J. KATZ and Fred H. Scher, Defendants.**

**No. 88 Civ. 6124 (RWS).**

United States District Court, S.D. New York.

Dec. 22, 1988.

Cadwalader, Wickersham & Taft, New York City (H. Peter Haveles, Jr., Ralph Berman, of counsel), for plaintiff.

Scheffler Karlinsky & Stein by Daniel E. McIntyre, New York City (Neal Gerber Eisenberg & Lurie, Chicago, Ill., of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiff L.F. Rothschild & Co. Incorporated ("Rothschild") has moved for an order pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, compelling defendants Marshall J. Katz ("Katz") and Fred H. Scher ("Scher") to proceed with the arbitration Rothschild commenced with the New York Stock Exchange ("NYSE") and staying the arbitration Katz and Scher initiated with the Chicago Board Options Exchange ("CBOE"). For the reasons set forth below, Rothschild's motion is granted.

*The Facts*

Katz and Scher are former Rothschild employees. They joined Rothschild on October 15, 1985, and in July of 1987 they began working as traders in the Arbitrage Department of the firm's Chicago office.

In this capacity, they traded equity options, bond options, currency options, and index options for Rothschild's own account ("the account"), according to the terms of a memorandum agreement the parties executed on July 24, 1987 ("the agreement"). The agreement stated that Rothschild would provide Katz and Scher risk capital of $500,000 for July through September of 1987 and an additional $500,000 for October through December of 1987. Rothschild claims the agreement authorized it to reduce the risk capital based upon Rothschild's assessment of general business conditions. The agreement also obligated Rothschild to pay Katz and Scher 10 percent of the account's profits between $600,000 and $1.6 million and 25 percent of the account's profits over $1.6 million, to be divided equally between them.

Around the beginning of the fourth quarter of 1987, Rothschild concluded that the risk capital the firm allocated to Katz and Scher was too large in light of the risk capital it made available to the entire Arbitrage Department and the market volatility at the time. The firm therefore directed Katz and Scher to reduce the number of positions they held in the account. Following the market crash on October 19, 1987,

Rothschild directed Katz and Scher to reduce the number of positions further.

In December of 1987, Katz objected to Rothschild's reduction of risk capital available to them, arguing that the account would have earned profits of almost $7 million had the firm provided them the risk capital the agreement originally required.

Based on the account's actual profits, Rothschild tendered Katz and Scher checks for $80,000 each for the balance due on their 1987 compensation. Katz and Scher refused these checks, claiming that Rothschild owed them more than $2 million under the agreement.

*Prior Proceedings*

Rothschild, Katz, and Scher attempted to settle this dispute, but their efforts failed. On June 14, 1988, Rothschild commenced an arbitration before the NYSE pursuant to provisions in Katz's and Scher's employment contracts that obligated each trader "to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer or any other person, that is required to be arbitrated under the rules, constitutions or bylaws of the [securities] organizations with which I register...." ("Arbitration Agreement"). In the statement of claim filed with the NYSE, Rothschild sought a declaratory judgment establishing that the firm was entitled to reduce the risk capital allocated to Katz and Scher and that it owed Katz and Scher only $80,000 each.

On June 16, 1988, Michael L. Michael ("Michael"), associate general counsel with Rothschild, telecopied a copy of the NYSE statement of claim to Marc S. Simon, counsel for Katz and Scher.

After receiving actual notice of Rothschild's statement of claim with the NYSE, Katz and Scher initiated a second arbitration by filing a statement of claim with the CBOE on July 28, 1988 to arbitrate the same dispute and to enjoin the NYSE arbitration.

On August 12, 1988, the CBOE sent Rothschild a letter advising the firm that Katz and Scher had commenced an arbitration before the CBOE. Ten days later, on August 22, 1988, the NYSE sent Katz and Scher by certified mail a copy of Rothschild's NYSE statement of claim. Both the NYSE and the CBOE claim jurisdiction over the dispute, but both have suspended the arbitrations pending the outcome of this motion.

On September 1, 1988, Rothschild filed this action to compel Katz and Scher to participate in the NYSE arbitration and to enjoin the CBOE arbitration. This court heard argument and the motion was fully submitted on September 23, 1988.

*The Issues*

The parties concede that Katz's and Scher's employment contracts obligate them to arbitrate their claims. They disagree, however, regarding who is the appropriate arbitrator for this dispute—the NYSE or the CBOE—and whether this court has the power to stay the CBOE arbitration.

*The Appropriate Arbitrator*

Under the Arbitration Agreement, either the NYSE or the CBOE could arbitrate Katz's and Scher's dispute with Rothschild. That agreement authorizes arbitration of any dispute between the parties "that is required to be arbitrated under the rules, constitutions or bylaws of the [securities] organizations with which [Katz or Scher] register." Katz and Scher registered with both the NYSE and the CBOE during their employment with Rothschild, and both exchanges have recognized jurisdiction over the dispute.[1]

Here, each party has commenced an arbitration proceeding that, standing alone, would be valid under the Arbitration Agreement. However, to permit both pro-

---

1. Rothschild argues that the CBOE has no jurisdiction over the dispute because its arbitration provision, Rule 18.1(a), authorizes it to arbitrate only claims arising "out of the Exchange business of such parties....," yet this case involves trades on several exchanges other than the CBOE. Read literally, this language supports Rothschild's argument. However, the CBOE has interpreted this language to include Katz's and Scher's claim. This court will not second-guess the CBOE's reading of the scope of its own arbitration authority.

ceedings to continue would require the parties to pursue the same claims or defenses in two separate forums, resulting in the duplication of the arbitrators' efforts and risking inconsistent outcomes.

■ To avoid these problems, only one of these proceedings should go forward. As a general rule, the forum where an action is first filed takes priority over the forum where a subsequent action arising out of the same facts is filed. *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir. 1969); *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 423 (2d Cir.1965), *cert. dismissed,* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966). Applying this principle here, the NYSE is the appropriate arbitrator. When the parties' settlement efforts stalled, Rothschild—as the Arbitration Agreement allowed—commenced arbitration with the NYSE. Only after learning of this proceeding did Katz and Scher initiate the CBOE arbitration.[2]

*Power to Stay the CBOE Arbitration*

■ Deciding that the NYSE arbitration rather than the CBOE arbitration should proceed does not end the inquiry. The present situation raises the difficult question of whether a New York district court faced with two competing arbitrations possesses the power to stay an arbitration in Chicago to allow an arbitration in New York to continue.

Although the Federal Arbitration Act authorizes a district court to stay litigation, it remains silent regarding a court's authority to stay arbitration. 9 U.S.C. § 3. However, this silence does not mean district courts have no such power. In *Societe Generale de Surveillance, S.A. v. Raytheon European Management & Systems Co.,* 643 F.2d 863 (1st Cir.1981), the First

Circuit was asked to choose between two rival arbitrations—one in Massachusetts and one in Switzerland—arising out of the same dispute. It rejected the argument that a federal court lacks the power to stay an arbitration and upheld the district court's stay of the Massachusetts arbitration, stating:

> The Act expressly provides federal courts with the power to order parties to a dispute to proceed to arbitration where arbitration is called for by the contract. 9 U.S.C. § [4]. To allow a federal court to enjoin an arbitration proceeding which is *not* called for by the contract interferes with neither the letter nor the spirit of this law. Rather, to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present.... In fact, were the law read to prevent a court from enjoining an arbitration proceeding it might actually interfere with arbitration—*in the unusual case, arguably present here, where one such arbitration proceeding may interfere with another.*

*Id.* at 868 (latter emphasis added); *see also Tai Ping Ins. Co. v. M/V Warschau,* 731 F.2d 1141, 1144 (5th Cir.1984) ("There is no provision in the Act for a stay of arbitration. Nonetheless, the case law clearly establishes that, in the appropriate circumstances, such an order is within the power of the district court.") (citing *Landis v. North Amer. Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed. 2d 82 (1977)).

That is precisely this situation. When Rothschild, Katz, and Scher contracted to arbitrate a dispute before any of "the [securities] organizations with which [Katz or Scher] register," surely they did not anticipate two—or perhaps more—rival arbitra-

**2.** Relying on the fact that the CBOE notified Rothschild before the NYSE notified Katz and Scher, Katz and Scher argue that the CBOE arbitration should take priority. This argument ignores the fact that Rothschild filed its statement of claim with the NYSE and sent a copy to Katz and Scher before Katz and Scher filed their statement of claim with the CBOE. Indeed, it appears that Katz and Scher initiated the CBOE proceeding in reaction to Rothschild's commencement of the NYSE arbitration.

tions arising out of the same controversy. With the NYSE proceeding already in place, therefore, the arbitration Katz and Scher commenced with the CBOE was not authorized by the contract. Under these circumstances, section 4 of the Federal Arbitration Act empowers this court to stay the unauthorized CBOE arbitration to enforce its order compelling Katz and Scher to proceed with the valid NYSE proceeding.

The *Societe Generale* analysis applies to this case, but with one important difference. In *Societe Generale*, a Massachusetts district court stayed a Massachusetts arbitration. Here, Rothschild asks a New York court to stay a Chicago proceeding. However, because this court has jurisdiction over Katz and Scher, it need not address the question of whether it has jurisdiction to prohibit the CBOE from continuing with the arbitration Katz and Scher commenced before it. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir.1977) (holding that an agreement to arbitrate disputes in New York constitutes consent to personal jurisdiction in New York). This court has the power to enjoin Katz and Scher from proceeding with the CBOE arbitration, and by doing so it effectively can stay that arbitration.

It may be worth noting that the CBOE may be a better forum for resolving the underlying dispute. When the events at issue occurred, Katz and Scher resided in Chicago and worked in Rothschild's Chicago office. However, Katz and Scher must present that issue to the NYSE arbitrators who might well conclude that Chicago is the more appropriate forum despite the earlier choice of New York. If the NYSE defers to the CBOE, Katz and Scher of course will be free to proceed with the CBOE arbitration.

Pursuant to this court's power under section 4 of the Federal Arbitration Act, Katz and Scher are directed to proceed to arbitration under the NYSE rules and are enjoined from proceeding under the CBOE rules. This action is dismissed with leave granted to reopen without further filing

fee if necessary to enforce this order or any further arbitration award.

It is so ordered.