**BHP BILLITON PETROLEUM (AMERICAS) INC.,**
Appellant,

v.

**ATLANTIA OFFSHORE LIMITED, Appellee.**

Nos. 01–09–00509–CV, 01–09–00647–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 4, 2009.

**814**

Glenn Richard Legge, Legge, Farrow, Kimmitt, McGrath & Brown L.L.P., Houston, TX, for Appellant.

Adam P. Schiffer, Schiffer Odom Hicks & Johnson PLLC, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and SHARP.

## OPINION

TERRY JENNINGS, Justice.

In this interlocutory appeal,[1] appellant, BHP Billiton Petroleum (Americas) Inc., challenges the trial court's temporary injunction enjoining it from pursuing a "second-filed arbitration" on its claim for breach of a construction contract against appellee, Atlantia Offshore Limited. Concluding that the arbitration involved "the same parties and same disputes" subject to an already pending arbitration proceeding, the trial court stayed and abated this "second-filed arbitration." BHP also challenges the trial court's order by petition for writ of mandamus.[2] In three issues, BHP contends that the trial court abused its discretion in enjoining it "from pursuing its contractual right to arbitrate its $67 million construction defect claim before arbitrators selected pursuant to the arbitration agreement," in staying the arbitration initiated by BHP and allowing the other "special purpose arbitration panel to extend its jurisdiction to matters not submitted" to it, and in "refusing to enjoin the limited purpose arbitration panel from arbitrating disputes not submitted" to it. In its petition for writ of mandamus, BHP also contends that it does not have an adequate remedy by appeal.

We dismiss the interlocutory appeal and deny the petition.

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon 2008). Appellate cause number 01–09–00509–CV.

2. Appellate cause number 01–09–00647–CV.

**Factual and Procedural Background**

In July 2005, Atlantia entered into an Engineering and Construction Services Agreement (the "Agreement") with BHP to engineer and construct an offshore platform to be erected in the Gulf of Mexico. Schedule 1 of the Agreement, entitled "Dispute Resolution," contains the following dispute resolution procedures:

1.  SETTLEMENT OF DISPUTES

The Parties agree that any dispute, which arises hereunder, shall be resolved in accordance with the dispute resolution procedures ("Procedure") set forth in this Schedule 1. This Procedure shall apply to any claim or dispute arising under or related to any of the Contract Documents (whether arising in contract, tort or otherwise, and whether arising at law or in equity), including (a) any dispute regarding the construction, interpretation, performance, validity or enforceability of any provision of the Contract Documents or whether either Party is in compliance with, or breach of, any provisions of the Contract Documents, and (b) the applicability of this Procedure to a particular dispute (a "Dispute"). The provisions of this Procedure shall be the exclusive method of resolving Disputes.

Section 1.1 of Schedule 1, entitled "Negotiation to Resolve Disputes," provides that, "[i]f a Dispute arises, the Parties shall attempt to resolve such Dispute" through senior management negotiations conducted promptly and in good faith and, if unsuccessful, twenty days later, "then either Party may submit such Dispute to binding arbitration under this Procedure by giving written notice to the other Party (an "Arbitration Notice")." Schedule 1 further provides,

1.2   Selection of Arbitrators

a.   Any arbitration conducted under this Procedure shall be heard by three (3) arbitrators (the "Arbitrators"), each qualified by his or her education, experience and training to resolve the disputed matters, selected in accordance with Clause 1.2. . . .

b.   Each party shall appoint one (1) arbitrator within (30) days of the filing of the arbitration, and the two arbitrators so appointed shall select the presiding arbitrator within thirty (30) days after the latter of the two arbitrators has been appointed by the Parties to the Dispute. If a Party to the Dispute fails to appoint its Party-appointed arbitrator or the two Party-appointed arbitrators cannot reach an agreement on the presiding arbitrator . . ., then the American Arbitration Association . . . shall serve as the appointing authority and shall appoint the remaining of the three arbitrators not yet appointed in accordance with its then-current Commercial Arbitration Rules ("Rules") . . .

1.3   Conduct of Arbitration

The Arbitrators shall expeditiously (if possible, within 90 days after its selection) hear and decide all matters concerning the Dispute. . . . The Arbitration shall be governed by the U.S. Federal Arbitration Act and conducted in accordance with the Rules (excluding rules governing the payment of arbitration, administrative or other fees or expenses to the Arbitrators or the AAA), to the extent that such Rules do not conflict with the terms of this Contract. The Arbitrators shall have the power . . . (b) to grant injunctive relief and enforce specific performance. . . . The decision of the Arbitrators (which shall be rendered in writing) shall be final, not subject to appeal, binding upon the Parties, and

may be enforced in any court of competent jurisdiction. . . .

On March 18, 2008, BHP sent Atlantia a notice of breach of the Agreement based upon alleged defects in the platform, and BHP demanded that Atlantia perform remedial or warranty work. On October 14, 2008, BHP sent Atlantia another letter, referencing its prior notice of breach and asserting that it had incurred $28 million in costs for certain services associated with the warranty work performed by Atlantia as well as other damages attributable to the delays in the work, and BHP demanded that Atlantia reimburse it for its costs. BHP stated that its demand also triggered the parties' obligations to commence senior management negotiations under the Agreement.

Pursuant to BHP's letter and the Agreement, the parties commenced senior management negotiations, but the negotiations were unsuccessful. On March 16, 2009, BHP sent a letter to Atlantia acknowledging that the parties had not been able to resolve their dispute, and BHP stated its intent to "instruct external counsel to proceed with drawing upon" a letter of credit (the "LOC") and "to commence arbitration proceedings" under the Agreement.

On March 17, 2009, Atlantia filed an application for a temporary restraining order and temporary injunction in the trial court. In this application, Atlantia stated that it had been obligated by the Agreement to furnish a $9 million LOC to secure its performance. Atlantia acknowledged that a dispute had arisen between the parties over payment of expenses incurred by BHP during the course of Atlantia's warranty work, but Atlantia contended that BHP's threat to immediately draw on the LOC, prior to a decision on the merits of the contractual dispute, violated the Agreement or was based upon fraud. Atlantia further contended that, although the merits of this dispute were subject to arbitration under the rules of the AAA, it would take at least thirty days to constitute a tribunal, which Atlantia averred would be too late "to address the matter at hand."

Atlantia stated that the "issues to be determined in the arbitration" would be to what extent Atlantia was responsible for BHP's costs and whether BHP had the right to draw on the LOC before Atlantia's liability for the costs had been established. Atlantia asserted that, to draw on the LOC, BHP would be required to certify Atlantia's failure to perform its obligations, such a certification would be false and fraudulent, and such action would cause Atlantia immediate and irreparable harm. Thus, Atlantia requested injunctive relief enjoining BHP from presenting the LOC "until 30 days after an arbitral tribunal capable of addressing this issue is further constituted."

On the same day that Atlantia filed its application, the trial court conducted a hearing and entered an "Agreed Standstill Order" (the "ASO"), which was signed by both BHP and Atlantia. The trial court ordered the parties to use their "best efforts" through March 25, 2009 "to constitute an arbitral tribunal pursuant to the Agreement" to "determine the issue of whether [BHP] may draw on the LOC." It also ordered Atlantia not to appeal "any decision by the arbitral tribunal on the issue of whether [BHP] may draw on the LOC." The trial court further ordered that, if a tribunal could not be constituted or could not determine "the issue" before March 25, 2009, the trial court would rule on Atlantia's application for a temporary restraining order on March 25, 2009 or would further extend the ASO. The trial court prohibited BHP from presenting the LOC to the bank until March 26, 2009 and both parties from filing any other proceed-

ing, except arbitration, "with respect to the matters at issue" in Atlantia's application for a temporary restraining order, "and, specifically [BHP's] ability to draw down on the LOC," prior to April 30, 2009. Finally, the trial court mandated that Atlantia would extend the LOC to a new expiration date of April 30, 2009.

On March 19, 2009, BHP sent Atlantia a letter designating, pursuant to section 1.2 of Schedule 1 of the Agreement and in accordance with the ASO, William Andrews as an arbitrator. In this letter, BHP cited Andrews's "extensive experience in construction disputes, both onshore and offshore" as being "valuable in resolving the captioned matter," which referred to Atlantia's application for injunctive relief. Atlantia also designated its arbitrator, and he, along with Andrews, selected the presiding arbitrator.

On March 23, 2009, after appointing its arbitrator under the ASO, BHP filed a response to Atlantia's application in the trial court, asserting that Atlantia's discussion of the merits of the contractual dispute was irrelevant to the discrete issue of the enforcement of the LOC. On March 24, 2009, the arbitration panel, consisting of the arbitrators appointed by the parties and the presiding arbitrator (the "private arbitration" panel), conducted a hearing, and, on March 25, 2009, issued an order denying Atlantia's application for a temporary restraining order. However, the private arbitration panel further stated in its order that it determined that it had "jurisdiction over the disputes arising out of and related to the [Agreement]" and that "a prompt hearing on the merits of the parties' dispute should be arranged." The panel set a scheduling hearing for March 30, 2009, and noted that it intended to provide an "expeditious arbitration."

On March 27, 2009, BHP sent the panel a letter stating that it had not formally submitted the merits of its contractual dispute to arbitration and had not submitted its arbitration demand to the AAA. BHP further asserted that the private arbitration panel had been expeditiously convened only to handle the limited issue of the LOC and that, although the panel might ultimately be designated to arbitrate the merits of the contractual dispute, the parties had not designated the panel to handle the contractual dispute at that time. On March 30, 2009, at the scheduling hearing, BHP again objected to the private arbitration panel's jurisdiction to rule on the contractual disputes or any other claims other than Atlantia's application for a temporary restraining order regarding the LOC. The private arbitration panel denied BHP's objection, and then set various deadlines for the arbitration. On April 13, 2009, BHP filed a formal objection to the private arbitration panel's jurisdiction and, subject to its objection, its affirmative claims. The panel again denied BHP's jurisdictional objection, stating that it had determined that it had jurisdiction to decide the current disputes between the parties, "including those for which Atlantia's LOC was called following" its order denying Atlantia a temporary restraining order.

On April 8, 2009, BHP filed a separate demand for arbitration against Atlantia with the AAA (the "AAA arbitration") for its affirmative claims concerning the alleged defective and negligent design of the platform, and BHP sought damages for reimbursement of costs and deferred production in the amount of $67 million. Atlantia filed an objection with the AAA to stop this separate arbitration proceeding, but, on April 21, 2009, the AAA issued a letter stating that BHP met the filing requirements and that, absent an agreement by the parties or a court order, the AAA arbitration would proceed.[3]

---

**3.** Atlantia's objection was filed directly with     the AAA, and nothing in the record indicates

On April 22, 2009, Atlantia filed another application for a temporary restraining order and temporary injunction in the trial court, this time seeking an order enjoining BHP from pursuing the AAA arbitration and staying that arbitration "because the matters in controversy" were "already the subject of a previously filed" private arbitration and that the private arbitration panel had "already issued a binding decision that it has jurisdiction over such matters."[4] The trial court granted Atlantia a temporary restraining order. BHP then filed in the trial court an answer and "counterclaim for permanent injunctive relief" in which it asked the trial court to find that the private arbitration panel did not have jurisdiction to hear the merits of the contractual dispute and that BHP may continue with the AAA arbitration. BHP also requested injunctive relief to enjoin the private arbitration on the basis that it was being deprived of its right to arbitrate the dispute under the procedures set forth in the Agreement. BHP cited the provisions in the Agreement that allowed a certain number of days to select an arbitrator qualified by education, experience, and training. BHP complained that it did not have the opportunity to evaluate and select an arbitrator based upon his knowledge of maritime law, vessel charter agreements, the remediation operation, and deferred production, all of which BHP contended were important parts of its $67 million claims.

After a hearing, the trial court issued a temporary injunction enjoining BHP from pursuing its AAA arbitration and staying the AAA arbitration. In the order, the trial court stated that the Agreement requires "all disputes (including disputes over whether the dispute resolution procedure applies to a particular dispute) be submitted to binding arbitration," "[a]n arbitral panel has been constituted and has determined that it has jurisdiction to decide the merits of the disputes between the parties," the panel's decision is binding on the parties, BHP's "second-filed" AAA arbitration involves the same parties and subjects of dispute as the private arbitration and is unauthorized, and that, without injunctive relief, Atlantia would be irreparably harmed by being forced to arbitrate in a manner inconsistent with the Agreement and being subjected to a significant risk of inconsistent outcomes.

## Jurisdiction

BHP has filed both an interlocutory appeal and a petition for writ of mandamus. In its appeal, BHP asserts that we have jurisdiction to determine whether the trial court erred in enjoining BHP from pursuing the AAA arbitration, staying the AAA arbitration, and not enjoining the private arbitration. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon 2008) (providing for interlocutory appeal from order granting or refusing to grant temporary injunction). BHP also asserts that we have jurisdiction to consider its challenges to the trial court's order, as well as the trial court's "implicit" refusal to enjoin the private arbitration, through its petition for writ of mandamus.

Atlantia agrees that BHP's interlocutory appeal of the temporary injunction is proper. Atlantia also agrees that BHP may seek mandamus relief to challenge the trial court's order enjoining BHP from pursu-

---

that an arbitration panel considered the issue of whether the AAA arbitration and the private arbitration should proceed simultaneously.

4. Atlantia also filed an application with the panel, but it declined to enjoin BHP from pursuing the AAA arbitration, citing, among various reasons, a lack of an enforcement mechanism.

ing the AAA arbitration and staying that arbitration. However, Atlantia disputes that BHP can appeal the trial court's implicit refusal to grant a temporary injunction because it argues that BHP only pleaded for permanent injunctive relief.

The Federal Arbitration Act ("FAA")[5] applies to the Agreement in this case. *See W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C.,* 237 S.W.3d 745, 751 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (noting that arbitration agreement provided that FAA would apply to dispute and stating that "[p]arties may validly agree to arbitrate under the FAA"). Although both parties agree that we have dual bases for jurisdiction to review the trial court's express order enjoining BHP from pursuing the AAA arbitration and staying that arbitration, we conclude that the actual order issued by the trial court is one staying the AAA arbitration.[6] Texas courts have held that a party, like BHP, seeking relief pursuant to the FAA from an order staying arbitration should pursue relief by way of petition for writ of mandamus. *See Haddock v. Quinn,* 287 S.W.3d 158, 168 (Tex.App.-Fort Worth 2009, pet. filed) (citing *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 780 (Tex.2006) (orig. proceeding); *In re Valero Energy Corp.,* 968 S.W.2d 916, 917 (Tex.1998) (orig. proceeding); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992) (orig. proceeding)). Our Court has also recently stated that generally "no interlocutory appeal lies from the order staying arbitration proceedings." *W. Dow Hamm III Corp.,* 237 S.W.3d at 752. Therefore, we dismiss for want of jurisdiction BHP's interlocutory appeal of the trial court's order prohibiting it from pursuing the AAA arbitration and staying that arbitration, and we proceed to determine whether BHP is entitled to mandamus relief from the trial court's order staying the AAA arbitration.[7] *See Haddock,* 287 S.W.3d at 168.

■ Mandamus is an extraordinary remedy, which will issue only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Ford Motor Co.,* 165 S.W.3d 315, 317 (Tex.2005) (citing *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004)); *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex. 1992). A trial court abuses its discretion when it errs in determining what the law is or in applying the law to the facts. *In re Bruce Terminix Co.,* 988 S.W.2d 702, 703 (Tex.1998).

### Order Staying the AAA Arbitration

■ In its first two issues, BHP argues that the trial court abused its discretion in enjoining it "from pursuing its contractual right to arbitrate its $67 million construction defect claim before arbitrators selected pursuant to the arbitration agreement" and in staying the AAA arbitration, because the Agreement contains procedures requiring that disputes be presented to arbitrators with the necessary education, experience, and training, and the trial court has denied it the right to arbitrate its claims in accordance with the Agreement. BHP asserts that the trial court has allowed the private arbitration

---

**5.** *See* 9 U.S.C. §§ 1–16 (West 2009).

**6.** Although the trial court's order is titled as a temporary injunction, we see no substantive distinction between an order prohibiting a party who has filed an arbitration proceeding from further "pursuing" that arbitration and an order staying the same arbitration.

**7.** As explained below, our resolution of BHP's challenge to the trial court's order staying the AAA arbitration moots BHP's challenge to the trial court's implicit refusal to stay the private arbitration.

panel "to extend its jurisdiction to matters not submitted" to it.

The issues presented here are atypical of those present in most appeals and mandamus actions related to arbitration. First, both BHP and Atlantia agree that all the matters in contention, including the LOC and the merits of the contractual dispute, are subject to arbitration under the Agreement. Second, after Atlantia filed its first application for injunctive relief, both Atlantia and BHP entered into the ASO, which expressly referred to the Agreement and instructed the parties "to constitute an arbitral tribunal pursuant to the Agreement" on an expedited basis. We conduct our review of the trial court's order staying the AAA arbitration with these unique procedural characteristics in mind.

The parties essentially ask us to consider whether the trial court was authorized to stay the AAA arbitration based upon its findings that the AAA arbitration was an unauthorized second-filed arbitration involving the same parties and subjects of dispute as the private arbitration and that the private arbitration panel made a binding decision that it had jurisdiction to hear the contractual merits dispute. The parties refer us to no Texas authority which would allow a trial court to enter an order staying an arbitration based upon the argument that it is duplicative of a previously filed, competing arbitration. However, other federal courts applying the FAA have concluded that a trial court possesses the power, in certain circumstances, to stay a competing arbitration. In *L.F. Rothschild & Co. v. Katz*, the plaintiff, citing 9 U.S.C. § 4 of the FAA, moved for an order compelling the defendants to proceed with an arbitration before the New York Stock Exchange ("NYSE") and staying a competing arbitration that the defendants had commenced with the Chicago

Board Options Exchange ("CBOE"). 702 F.Supp. 464, 465 (S.D.N.Y.1988). The parties agreed that the plaintiff's claims were subject to arbitration, and both the NYSE and the CBOE were authorized to arbitrate the dispute. *Id.* at 466. The court stated,

> Here, each party has commenced an arbitration proceeding that, standing alone, would be valid under the Arbitration Agreement. However, to permit both proceedings to continue would require the parties to pursue the same claims or defenses in two separate forums, resulting in the duplication of the arbitrators' efforts and risking inconsistent outcomes.
>
> To avoid these problems, only one of these proceedings should go forward. As a general rule, the forum where an action is first filed takes priority over the forum where a subsequent action arising out of the same facts is filed.

*Id.* at 466–67.

Applying the "first-filed" principle, the court determined that the NYSE was the appropriate arbitrator because the plaintiff had commenced that proceeding first and the defendants had commenced the CBOE arbitration only after learning of the competing proceeding. *Id.*

After determining that the NYSE would be appropriate arbitrator, the court then examined its authority to stay the competing, second filed arbitration. *Id.* The court recognized that "[a]lthough the Federal Arbitration Act authorizes a district court to stay litigation, it remains silent regarding a court's authority to stay arbitration." *Id.* (citing 9 U.S.C. § 3). However, the court concluded that this "silence" did not leave district courts without such power. *Id.* The court, quoting persuasive authority, stated,

> The Act expressly provides federal courts with the power to order parties to

a dispute to proceed to arbitration where arbitration is called for by the contract. 9 U.S.C. § [4]. To allow a federal court to enjoin an arbitration proceeding which is *not* called for by the contract interferes with neither the letter nor the spirit of this law. Rather, to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present.... In fact, were the law read to prevent a court from enjoining an arbitration proceeding it might actually interfere with arbitration—*in the unusual case, arguably present here, where one such arbitration proceeding may interfere with another.*

*Id.* at 467 (quoting *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.,* 643 F.2d 863 (1st Cir. 1981)). Based upon this authority, the court concluded that when the parties contracted to arbitrate a dispute "surely they did not anticipate two-or perhaps more-rival arbitrations arising out of the same controversy" and that, after the first arbitration proceeding was already in place, the second-filed arbitration "was not authorized by the contract." *Id.* at 468. The court stated that, in these circumstances, section 4 of the FAA empowered a court to stay the unauthorized arbitration. *Id.*

No Texas court has yet applied the first-filed principles articulated in *Katz* to stay competing arbitration proceedings, but Texas courts recognize the first-filed principles in the litigation context. *See Perry v. Del Rio,* 66 S.W.3d 239, 252 (Tex.2001) ("[W]hen cases involving the same subject matter are brought in different courts, the court with the first-filed case has dominant jurisdiction and should proceed, and the other cases should abate."). Here, it is undisputed that all of the matters in dispute between BHP and Atlantia are governed by the FAA and are subject to arbitration under the Agreement. The instant circumstances are comparable to those in *Katz,* and the analysis in *Katz* persuasive. Accordingly, we conclude that the trial court, under section 4 of the FAA, was authorized to enter an order staying the AAA arbitration.

We now turn to consider whether the trial court properly determined that the AAA arbitration was a competing, duplicative arbitration that involved the same subject matter and controversy as the private arbitration.

In its March 18, 2008 letter to Atlantia, BHP claimed that Atlantia had breached the Agreement, and BHP demanded that Atlantia perform warranty work. In its October 14, 2008 letter, BHP claimed $28 million in reimbursable costs that it had allegedly incurred, and it demanded that Atlantia reimburse it for these costs. It also indicated that there were additional damages associated with the resulting delay. Thus, BHP expressly triggered the parties' obligations under the Agreement to commence senior management negotiations to resolve this Dispute. The record before us conclusively shows that the Dispute, as that term is used in the Agreement, that was being submitted for senior management negotiations prescribed for by the parties involved the merits of the parties' entire contractual dispute; the LOC dispute had not yet arisen.

Following the parties' unsuccessful senior management negotiations of this Dispute, which was conducted pursuant to the Agreement, BHP notified Atlantia of its intent "to commence arbitration proceedings" under the Agreement. Although the letter also expressed BHP's intent to "instruct external counsel" to draw upon the LOC to recover at least some of its damages associated with this Dispute, the letter unequivocally indicated BHP's intent to commence arbitration of the entire Dispute. In response, Atlantia filed its first

application for injunctive relief, in which it specifically referenced not only the LOC but also the merits of the contractual dispute. It also specifically stated that the "issues to be determined in the arbitration" would be both the contractual dispute and the LOC dispute. Atlantia took the position that the LOC dispute and the contractual merits dispute could not be separated, and Atlantia requested injunctive relief enjoining BHP from presenting the LOC "until 30 days after an arbitral tribunal capable of addressing this issue is further constituted." Because Atlantia contended that the LOC dispute and the contractual merits dispute could not be separated, Atlantia did not merely seek injunctive relief prior to any expedited arbitral consideration of the LOC issue, but also injunctive relief prior to any decision of the contractual merits dispute.

BHP was not obligated to enter into the ASO. However, in paragraph 2 of the ASO, both BHP and Atlantia agreed to, between March 17, 2009 and March 25, 2009, use their best efforts *"to constitute an arbitral tribunal pursuant to the Agreement and to have the arbitration tribunal determine the issue of whether [BHP] may draw on the LOC."* (Emphasis added). Thus, paragraph 2 obligated BHP to make efforts to both constitute a panel under the Agreement and to have the panel make a determination on the LOC issue by March 25. Although most of the paragraphs of the ASO refer to the LOC, nothing in the ASO indicated that the private arbitration panel constituted thereunder, and pursuant to the Agreement, would be dissolved following the determination of the LOC dispute or that the private arbitration panel would be voided if the panel could not come to a determination of the LOC issue by March 25. Instead, the parties simply agreed that, in that instance, the trial court would rule on Atlantia's application for a temporary restraining order or would further extend the ASO as necessary.

BHP's March 19, 2009 letter designating William Andrews pursuant to section 1.2 of Schedule 1 of the Agreement and in accordance with the ASO belies BHP's contention that it designated Andrews solely to consider the LOC issue. In its letter, BHP stated that Andrews was being appointed to resolve "the captioned matter," which was Atlantia's application for injunctive relief. By its plain terms, this application related both to the LOC and the contractual merits dispute. The bottom line is that, at the time the private arbitration panel was constituted by the parties pursuant to both the Agreement and the ASO, the parties had already conducted senior management negotiations under the Agreement regarding the contractual merits dispute, BHP had expressed its intent to instruct its counsel to commence arbitration of the contractual merits dispute, and Atlantia had filed an application for injunctive relief, which included its contention that the LOC could not be resolved without a determination of the merits of the contractual dispute. The Agreement does not contemplate the setting up of a special or limited purpose arbitration panel that would terminate upon March 25 or immediately after a determination of the LOC issue. Instead, it contemplates a panel constituted under the Agreement, which by the Agreement's terms, is set up to consider and address the Dispute. At the time the panel was constituted, the Dispute was not limited to the LOC.

BHP's demand in the AAA arbitration reflects that BHP seeks to arbitrate the same matters at issue in the private arbitration. This is, of course, why BHP sought injunctive relief to stay the private arbitration. But, we have concluded that trial court did not err in determining that the private arbitration panel had jurisdiction to hear the contractual merits dispute. Because the contractual merits dispute was already the subject of the pending

private arbitration, we hold that the trial court did not abuse its discretion in entering an order staying the AAA arbitration.

In so holding, we note that BHP has not been denied its contractual right to arbitrate its $67 million construction defect claim before arbitrators selected pursuant to the Agreement. BHP complains that the trial court's order has the effect of denying its contractual rights to have sufficient time to vet any potential arbitrators and ensure that they possess specialized knowledge regarding the types of claims it seeks to bring. Although Schedule 1 provides that the appointed arbitrators shall be qualified by education, experience, and training to resolve the disputed matters, nothing in the ASO affected this provision. As discussed above, at the time the parties signed the ASO and appointed their arbitrators on an expedited basis, the disputed matters were the LOC and the related contractual merits dispute. Furthermore, although Schedule 1 provides parties with thirty days to appoint their arbitrators, BHP signed the ASO and appointed its arbitrator on an expedited basis. BHP's argument that it is being deprived of certain contractual rights is unavailing.[8]

We overrule BHP's first two issues.[9]

## Conclusion

We dismiss the interlocutory appeal and deny BHP's petition for writ of mandamus.

8. At oral argument, BHP, in support of its argument that the arbitration panel exceeded its scope in determining that it could consider the contractual merits dispute, relied upon *Burlington Resources Oil & Gas Co. LP v. San Juan Basin Royalty Trust*, 249 S.W.3d 34 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). However, in *Burlington Resources*, we considered an arbitration agreement entered into by the parties to settle existing, specific audit disputes. *Id.* at 37. The agreement provided that the specific audit disputes "constitute[d] the only items" subject to arbitration, and the agreement detailed the specific amounts at issue for the audit disputes. *Id.* at 40. Despite the specifically identified and narrowly limited audit disputes set forth in the arbitration agreement, the arbitrator awarded to one of the parties, based upon on a "newly asserted claim," an amount that "greatly exceeded, beyond any amount that could have reasonably been contemplated by the parties," the amounts in dispute that were identified in the agreement. *Id.* at 45. We first determined that the parties had not agreed by clear and unmistakable language to submit questions regarding the scope of arbitrable issues to the arbitrator. *Id.* at 42. Then, after concluding that our inquiry was controlled by "the unambiguous provisions of the Arbitration Agreement," which set forth "detailed descriptions of the relevant audit disputes and the associated arbitrate amounts," we held that the "newly asserted claim" and the awarded amounts for this claim were "clearly beyond the agreed scope of the arbitration." *Id.* at 45–46. Here, although the parties dispute which panel should entertain the contractual merits dispute, it in undisputed that the parties agreed to arbitrate all of their disputes. It is also undisputed that, at the time the parties entered into the ASO, the parties had conducted, in accordance with the Agreement, senior management negotiations for the entire dispute. As we have noted, the ASO provided for a panel to be constituted pursuant to the Agreement, and the Agreement does not contemplate a special or limited purpose panel that would immediately dissolve following the LOC determination. The Agreement also contains a provision providing that the dispute resolution procedures apply to any disputes over the applicability of the procedures to a particular dispute.

9. Our holding that the trial did not abuse its discretion in staying the AAA arbitration moots BHP's third issue, in which it contends that the trial court erred in implicitly refusing to enjoin Atlantia from proceeding in the private arbitration. We also need not consider BHP's fourth issue in its mandamus action regarding the adequacy of its appellate remedy.