**IDEAL UNLIMITED SERVICES CORP., Plaintiff,**

v.

**SWIFT–ECKRICH, INC., et al., Defendants.**

Civ. No. 89–71 HL.

United States District Court, D. Puerto Rico.

Dec. 12, 1989.

Nicolás Jiménez, San Juan, P.R., for plaintiff.

Ricardo Casellas, Fiddler, González & Rodríguez, San Juan, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff Ideal Unlimited Services Corp. ("Ideal"), a Puerto Rico corporation, filed a complaint under diversity jurisdiction against defendants Swift–Echrich, Inc. and Swift & Company ("Swift"), both Delaware corporations having their principal places of business in Illinois. Ideal claims damages for breach of contract, fraud, negligence and defamation under the laws of Puerto Rico, arising out of Swift's termination of the parties agreement, entitled "Warehouse and Delivery Agreement." Pending before the Court is Swift's motion to dismiss this action in favor of arbitration.

Swift argues that because the Warehouse and Delivery Agreement ("Agreement") contains an arbitration clause and the Agreement evidences a transaction involving interstate commerce, the complaint should be dismissed under the Federal Arbitration Act ("FAA"), 9 U.S.C. sec. 1 *et. seq.* Ideal concedes that all of the claims alleged in the complaint are arbitrable under Clause 16 of the Agreement and it should be referred to arbitration.[1] Ideal's Memorandum at 1. Ideal, however, contends that their Agreement is not a trans-

---

1. Clause 16 of the Agreement states:

   Any controversy arising under this Agreement shall be decided by arbitration in accordance with the Rules of the American Arbitration Association, and the ruling of the arbitrator shall be final and binding on the parties hereto. Judgment on an award rendered may be entered in any court of competent jurisdiction. Any arbitration pursuant to this paragraph shall be held in San Juan, Puerto Rico.

action involving commerce but is an intrastate transaction. Ideal consequently claims that the Puerto Rico Arbitration statute, 32 L.P.R.A. sec. 3201 *et. seq.*[2] controls and this Court should stay rather than dismiss this action pending the arbitration proceedings.

The FAA was enacted " 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate' (citation omitted), and to place such agreements 'upon the same footing as other contracts (citation omitted).' " *Volt Information Sciences, Inc. v. Board of Trustees,* — U.S. —, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). The FAA is intended to encourage speedy resolution of disputes and to bind parties to their voluntary agreements. *Id.*

The FAA applies only to arbitration agreements involving "maritime transactions" or "contracts evidencing a transaction involving commerce." 9 U.S.C. sec. 2. "Commerce," within the meaning of the FAA, refers to interstate, territorial, or foreign commerce. 9 U.S.C. sec. 1. The Court notes that the term "involving commerce" is to be broadly construed as a result of the strong federal policy favoring arbitration. *Snyder v. Smith,* 736 F.2d 409, 417 (7th Cir.1984), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967); *Securities Industry Ass'n v. Connolly,* 883 F.2d 1114 (1st Cir.1989); *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 243 (5th Cir.1986); *Societe Generale De Surveillance v. Raytheon European Management & Systems Co.,* 643 F.2d 863, 867 (1st Cir.1981); *C.P. Robinson Construction Co. v. National Corp. for Housing Partnerships,* 375 F.Supp. 446 (M.D.N.C.1974).

In deciding whether there is a transaction involving commerce, the Court may look to the contract, affidavits, and the parties' business operations. *Snyder v. Smith,* 736 F.2d at 417. In this case, the Agreement is between two Delaware corporations with principal places of business in Illinois and a Puerto Rico corporation. The original agreement was prepared in the United States by Swift and sent via mail to Ideal for its execution in Puerto Rico. As shown from the Agreement and the affidavit of the Managing Director of the International Division of codefendant Swift–Eckrich, Inc., the Agreement concerns the importation of U.S. produced products into Puerto Rico and Ideal's receipt, storage and delivery of the products to Swift's customers in Puerto Rico. Specifically, Ideal is responsible for obtaining Swift's food products from the piers in San Juan, Puerto Rico, and storing them in Ideal's warehouse. A Swift representative is present at Ideal's warehouse for the purpose of coordinating Swift's activities. Swift's personnel are in charge of selling the imported food products in Puerto Rico. Once the products are sold to a local buyer and Ideal receives a sale order from Swift, Ideal must then deliver said products. It is apparent from the Agreement that the parties are involved in a commercial transaction and the FAA is applicable.

A number of courts have found that contracts that are to be performed in one state may still be considered transactions involving interstate commerce when the contracting parties are from different states; the contracts necessitate interstate travel; communication is through the postal system; and/or materials used in the performance of the contracts were manufactured or transported over state borders. For instance, in *Mesa,* 797 F.2d at 243, a contract was executed to sell royalty gas belonging to the state of Louisiana. The gas was produced in Louisiana and sold to Louisiana customers only. However, the sellers of the gas were citizens of Texas who were operating in Louisiana. The sellers had sent personnel from Texas to Louisiana

---

**2.** 32 L.P.R.A. sec. 3203 provides:

If any of the parties to a written arbitration institutes action or other legal remedy, the court before which said action or remedy is pending shall, after being satisfied that any dispute involved in said action or remedy may be submitted to arbitration under said agreement, and on motion of any of the parties to the arbitration agreement, order said action or remedy stayed, until such time as the arbitration has been proceeded with, according to the agreement.

and all communications and payments under the contract were received in Texas. The Fifth Circuit held that such a contract involved interstate commerce. The court stated that:

> Citizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under the FAA. Such a contract necessitates interstate travel of both personnel and payments. Commerce under the FAA is not limited to interstate shipment of goods ... but includes all contracts 'relating to interstate commerce.'

*Id.* at 243 (citing *Prima Paint*, 87 S.Ct. at 1805 n. 7).

In addition, in *Del E. Webb Construction v. Richardson Hosp. Authority*, 823 F.2d 145 (5th Cir.1987), the court found that FAA was applicable to a construction contract to be performed in one state where the contracting parties were from "different states, employees of the plaintiff traveled interstate; the interstate mails were used to facilitate the work of the plaintiff's subcontractors; and materials used in the construction of the defendant's facilities were manufactured and moved in interstate commerce." *Id.* at 147. *See also C.P. Robinson*, 375 F.Supp. at 451; *Sears*

*Roebuck & Co. v. Glenwal Co.*, 325 F.Supp. 86, 89–90 (S.D.N.Y.1970), *aff'd*, 442 F.2d 1350 (2d Cir.1971).

■ Similarly, in this case, the FAA controls because the parties were from different locations [3] and the contract involved the warehousing and delivery of imported food products. Food products were grown in the United States to be sold in the Puerto Rico market. The original agreement and its amendments were signed by Swift in Illinois and were then sent via mail to Ideal in Puerto Rico for execution. The use of interstate mail was used frequently to send delivery orders, shipping orders, ocean bills of lading and freight invoices. Swift personnel have frequently traveled from Illinois to Puerto Rico to inspect Ideal's warehouse, evaluate Ideal's financial condition, inventory handling and delivery practices and ensure contract compliance. Clearly, the parties's contract evidences a transaction involving commerce.

■ Ideal also contends that because the Agreement stipulated that it is governed by the laws of Puerto Rico this Court should stay the action.[4] We, however, see no point in staying this action, when both parties agree that all issues alleged in the complaint are arbitrable and that this case should be submitted to arbitration. This

---

**3.** Plaintiff also argues that the FAA does not apply to Puerto Rico because it is neither a state nor a territory within the meaning of the FAA. Although there is no case addressing the issue of whether Puerto Rico is a territory under the FAA, this district has consistently applied the FAA to Puerto Rico contracts involving commerce without regard to the political status of Puerto Rico. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Líneas Aéreas Costarricenses, S.A. v. Caribbean General, Inc.*, 682 F.Supp. 117 (D.P.R.1988); *Sea–Land Service, Inc. v. Sea Land of P.R., Inc.*, 636 F.Supp 750 (D.P.R.1986); *Cardona Tirado v. Shearson Lehman American Express, Inc.*, 634 F.Supp 158 (D.P.R.1986); *Sumaza v. Cooperative Ass'n.*, 297 F.Supp. 345 (D.P.R.1969). *See also* Section 9 of the Federal Relations Act, 48 U.S.C. § 734. Accordingly, for the purposes of the FAA, Puerto Rico is to be treated like a state.

**4.** Ideal relies on *Volt Information Sciences, Inc. v. Board of Trustees*, 109 S.Ct. 1248, a recent Supreme Court decision. We find, however, that *Volt* is restricted to its facts and therefore not applicable in this case. *See Marchetto v. DeKalb Genetics Corp.*, 711 F.Supp. 936 (N.D.Ill.

1989). In *Volt*, the Supreme Court affirmed a California court's decision to stay arbitration under a California Civil Procedure Rule which allows such a stay pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by the arbitration agreement. In contrast, the present action does not deal with staying arbitration pending the final determination of a related litigation.

The issues that would be presented to the arbitrator are identical to the issues that would be presented in this court. It makes no sense in keeping alive this federal litigation when the arbitrator has to decide all controversies as mandated by the parties' voluntary agreement. If certain allegations in the complaint were arbitrable and others were not, then it might be logical to stay the federal proceedings pending the outcome of the arbitration proceedings. However, that is not the case here. Since the parties have agreed to arbitrate "any controversy arising under (their) Agreement" and both federal law and Puerto Rico law have strong public policies favoring arbitration of disputes, it serves no useful purpose in maintaining jurisdiction over this action. 32 L.P.R.A sec. 3201.

**78**

action is similar to the case of *Sea–Land Services, Inc. v. Sea–Land of P.R., Inc.,* 636 F.Supp. 750 (D.P.R.1986) in which the court held that:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law. (citations omitted). This course of action will also make the arbitrability issue immediately appealable, (citations omitted), and will avoid the litigation expenses and delay if the arbitration conducted were vacated by a later appeal. *Since there are no live controversies before this court, the appropriate procedure is dismissal of the action without prejudice.* (citations omitted).

*Id.* at 757–58 (emphasis added).

In conclusion, the Warehouse and Delivery Agreement evidences a transaction involving commerce and therefore subject to the Federal Arbitration Act, 9 U.S.C. sec. 1 *et. seq.* Since both parties agree that all issues presented in the complaint are arbitrable, there is no longer a live controversy before the Court, this action is accordingly dismissed without prejudice.

WHEREFORE, defendants' motion to dismiss is hereby GRANTED. Accordingly, the Court hereby ORDERS the parties to submit to arbitration all controversies arising from said agreement, pursuant to Clause 16 of the Warehouse and Delivery Agreement. Judgment shall be entered accordingly.

IT IS SO ORDERED.

*See Acevedo Maldonado v. PPG Industries, Inc.,* 514 F.2d 614, 617 (1st Cir.1975).