**Edwin R. WORKMAN and Connie Workman, his wife, Plaintiffs–Respondents,**

**v.**

**ORKIN EXTERMINATING COMPANY, INC., Defendant–Appellant.**

**No. 24011.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 13, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 5, 2001.

Matthew M. Mocherman, Bradshaw, Steele, Cochrane & Berens, L.C., Cape Girardeau, for Defendant-Appellant.

Joseph P. Rice, III, Rice, Spaeth, Heisserer, Summers & Remley, L.C., Cape Girardeau, for Plaintiffs-Respondents.

### KERRY L. MONTGOMERY, Judge.

On December 16, 1997, Edwin R. and Connie Workman (Plaintiffs) entered into a written agreement with Orkin Exterminating Company, Inc. (Orkin). In pertinent part, the agreement provides:

ARBITRATION: Any dispute arising out of or relating to this agreement or the services performed under this agreement or tort based claims for personal or bodily injury or damage to real or personal property shall be finally resolved by arbitration administered under the commercial arbitration rules of the American Arbitration Association. This agreement involves interstate commerce; furthermore, the parties expressly agree that their mutual rights and obligations and the conduct of any arbitration proceeding shall be controlled by the Federal Arbitration Act. The award of the arbitrator shall be final, binding, non-appealable and may be entered and enforced in any court having jurisdiction in accordance with the Federal Arbitration Act. The arbitrator shall not have the power or authority to award exemplary, treble, liquidated or any type of punitive damages.

Plaintiffs filed suit on May 5, 2000, alleging that they had "entered into an agreement" with Orkin and that Orkin "had failed to provide the treatment as outlined originally to Plaintiff or that the treatment as provided did not prevent, terminate, end or stop the termite infestation." Plaintiffs prayed for actual and punitive damages. Orkin filed an answer alleging *inter alia* an affirmative defense based upon the arbitration provision of the parties' agreement.

Subsequently, Orkin filed a motion for stay of the proceedings pending the outcome of arbitration in accordance with the parties' agreement. In support of this motion, Orkin filed affidavits indicating that pesticides used in the treatment of Plaintiffs' home were shipped from Georgia to Missouri and that Orkin is a Delaware corporation having its principal place of business in Georgia.[1] Plaintiffs do not dispute these facts.

On November 13, 2000, the trial court entered its judgment denying Orkin's motion without explanation. This appeal followed.

■ Here, Orkin claims the trial court erred in denying its motion because the Federal Arbitration Act (FAA) mandates enforcement of the parties' agreement to arbitrate. We agree.

The Federal Arbitration act applies to contracts between parties that "involve commerce." 9 U.S.C. § 2. The act defines "commerce" as "commerce among the several states ..." *Id.* at § 1. The federal courts have construed the meaning of "involving commerce" broadly. A contract comes under the Federal Arbitration Act so long as it simply relates to interstate commerce. *Del E. Webb Const. v. Richardson Hosp. Authority,* 823 F.2d 145, 147 (5th Cir.1987); *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 243 (5th Cir.1986). The relationship to commerce need not even be substantial. *Del E. Webb,* 823 F.2d at 147. A contract involves commerce under the Federal Arbitration Act in situations where large quantities of materials are purchased from suppliers in other states.

---

1. Plaintiffs offered no evidence in the trial court disputing the allegations in Orkin's affidavits nor any other evidence in opposition to Orkin's motion.

Starr Elec. Co. v. Basic Const. Co., 586 F.Supp. 964, 966 (M.D.N.C.1982). Further, contracts to be performed within one state have been found to involve commerce when the contracting parties are from different states; the U.S. postal system is used; or the materials are transported over state borders. *Mesa,* 797 F.2d at 243; *Ideal Unlimited Services v. Swift–Eckrich, Inc.,* 727 F.Supp. 75, 76 (D.P.R.1989). *Woermann Const. Co. v. Southwestern Bell Tel. Co.,* 846 S.W.2d 790, 792 (Mo.App. 1993).

In *Brookfield R–III School Dist. v. Tognascioli Gross Jarvis Kautz Architects,* 845 S.W.2d 103, 104 (Mo.App.1993), the appellate court held that a construction contract between Missouri parties for construction in Missouri involved interstate commerce where employees crossed state lines and the material was shipped from out of state. The court concluded that the project involved interstate commerce within the contemplation of the FAA, and that the trial court was required to apply the federal law of arbitration. *Id.* at 105.

We discern little, if any, factual differences between *Brookfield* and this case. Orkin and Plaintiffs contracted in this state, but the materials used in Plaintiffs' home were shipped from Georgia. Admittedly, Orkin and Plaintiffs are from different states. These circumstances dictate a finding, according to *Brookfield,* that the contract in question "relates to interstate commerce" and is governed by the FAA. For that reason, the trial court erred in denying Orkin's motion.

■ Plaintiffs seek to uphold the trial court by arguing that the initial termite treatment "had not been performed" and, consequently, the arbitration provision had no effect. We reject that argument because the record is devoid of any evidence concerning Orkin's performance of the contract. We must decide the case "not on the facts alleged to have happened, but on the facts shown by the record." *Thornton v. Deaconess Medical Center–West Campus,* 929 S.W.2d 872, 873 (Mo.App.1996).

The judgment is reversed and the cause is remanded. Upon remand, the trial court is directed to enter judgment sustaining Orkin's motion to stay the proceedings pending arbitration.

SHRUM, P.J., and BARNEY, C.J., concur.